## OKLAHOMA PORTLAND CEMENT CO. v. POLLOCK.

No. 24897.    Oct. 19, 1937.

Rehearing Denied Nov. 16, 1937.

Warren B. Kice (Clark & Gilbreath, of counsel), for plaintiff in error.

Wimbish & Wimbish, for defendant in error.

HURST, J. This is 'an appeal from a judgment, rendered on the verdict of a jury, for $3,000, in favor of P. A. Pollock, plaintiff, and against Oklahoma Portland Cement Company, defendant, in an action to recover damages for breach of an oral contract of employment.

The plaintiff, in his petition, alleged in substance: That in April, 1918, while he was employed by the defendant in its cement mill, in a hazardous employment, he sustained 'an injury resulting in temporary total 'and partial permanent disability; that he entered into an oral contract with the defendant, through its general manager, whereby, in consideration of his refraining from prosecuting his claim before the State Industrial Commission, the defendant "agreed to furnish him employment for the rest of his natural life, of such kind as he would be capable of performing, and would not require strenuous manual labor"; that both parties performed said agreement for a period of more than twelve years, when, in July, 1931, the defendant, without cause, breached said contract and discharged the plaintiff, to his damage in the sum of $12,921, for which he prayed judgment.

The defendant raised the sufficiency of the petition by demurrer, which was overruled. The defendant then filed an answer containing a general denial, 'and further alleged that the contract, if made, was void and in violation of law; 'and that the district court was without jurisdiction, the industrial court alone having jurisdiction. The plaintiff by his reply denied generally the allegation of the answer, 'and alleged that the defendant had ratified the contract, and that it was estopped from denying liability for the reason that he had refrained from presenting his claim to the State Industrial Commission in reliance upon said agreement.

1. The first contention of the defendant is that the district court was without jurisdiction of this action, and that the State Industrial Commission has exclusive jurisdiction. This position is untenable. It is an action to recover damages for breach of contract of employment, not to enforce rights under the Workmen's Compensaton Law.

2. The second contention is that the agreement is prohibited by the Workmen's Compensation Law and is void and unenforceable for want of mutuality under sections 13371 and 13372, O. S. 1931, which provide as follows:

Sec. 13371. "No agreement by an employee to waive his right to compensation under this act shall be valid."

Sec. 13372. "Claims for compensation or benefits due under this act shall not be assigned, released or commuted except as provided by this act. * * *"

It is not contended that the evidence does not justify the verdict of the jury in finding that the contract was made as alleged or that the plaintiff had fully performed the services required of him under the contract until he was discharged, or that the amount of the judgment is excessive. The argument merely goes to the consideration for the contract of employment sued on.

The proper analysis of this contention presents several questions.

First, What was the consideration? Plaintiff had the right to file his claim with the Industrial Commission and on the strength of the promise for lifetime employment he promised not to exercise that right. This is a legal detriment to him and constitutes a valuable consideration. 5 C. J. 890; 18 R. C. L. 510; 39 C. J. 41.

Second, Is the consideration illegal, or invalid by reason of sections 13371 and 13372? The defendant relies upon United States F. & G. Co. v. State Industrial Comm. (1926) 125 Okla. 131, 256 P. 892, and Shawnee Morning News v. Thomas (1927) 125 Okla. 155, 256 P. 937, for the proposition that the settlement in question is "void." We are well aware of the familiar statement that where a contract is illegal, it is **void** and cannot be enforced by either party. But such loose language is criticised in Williston on Contracts, sec. 1630, wherein it is said:

"To go farther and assert that all unlawful agreements are ipso facto no contracts and void, is opposed to many decisions and un-

fortunate in its consequences, for it may protect a guilty defendant from paying damages to an innocent plaintiff. Doubtless a statute may and sometimes does make an agreement absolutely void, but even though a statute so states in terms, void has sometimes been held to mean voidable, and unless no other conclusion is possible from the words of a statute it should not be held to make agreements contravening it totally void."

The statutes in the case at bar do not, in express terms, make such agreements "void," and the cases cited refer to the agreements or receipts therein relied on as "invalid" and not binding upon the claimant on application for additional award on change of condition. For cases of similar import not referred to by defendant, see Texas Pac. Coal & Oil Co. v. Morrison (1931) 148 Okla. 205, 298 P. 270, and Bartlett-Collins Glass Co. v. Washabaugh (1933) 166 Okla. 90, 26 P. (2d) 420 ('agreement to be binding must be approved by commission); G. S. & C. Drilling Co. v. Pennington (1931) 151 Okla. 61, 1 P. (2d) 764; Rucks-Brant Const. Co. v. Price (1933) 165 Okla. 178, 23 P. (2d) 690; and St. Joseph Mining Co. v. Pettit (1923) 90 Okla. 242, 216 P. 657 (settlement not binding on change of condition). Assuming that these authorities render the agreement "invalid" and "not binding upon the claimant," they do not hold the agreement void in the sense of no contract. We hold that the statutes do not render the contract void in the strict sense, but we do not here pass upon its legality in any other respect. However, the plaintiff earnestly insists that the statutes quoted do not render the contract illegal in any sense and relies upon the cases of T. B. Gasoline Co. v. Boring (1924) 99 Okla. 61, 225 P. 902; Brigham Young University v. Industrial Commission (Utah, 1929) 279 P. 889, 65 A. L. R. 152; Jenkins v. Texas Employers Ins. Ass'n (1919 Tex. Civ. App.) 211 S. W. 349.

It is stated in 13 C. J. 492, that "no principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out." But this general rule has no application where the illegality arises from statutory restrictions and the granting of the relief sought will not defeat the purpose of the enactment. The instant case falls within this latter type, and under this view we are not required to enter the argument of the parties as to whether the sections quoted render the contract il-

legal. Such determination, under the facts of this case, would be purely academic.

Assuming, without deciding, that the contract is illegal by force of the statutes, we must consider briefly the purpose of the enactment of the Workmen's Compensation Law. By the enactment of this law there was effected a substantial change in the relation of master and servant to each other and to the public, to the end that an employee engaged in one of the enumerated occupations, who has been injured, should receive such compensation as would prevent him and his family from becoming public charges. Instead of the losses being borne by the injured employee or his dependents, it was the belief that such losses should be borne by the industry causing them or by the consumers of the products of such industry. It is observed that the purpose and intent of the act was that additional benefits should be extended to injured employees in certain enumerated occupations, and that additional burdens were imposed upon the industries enumerated in the act. The statutory provisions quoted were enacted to prevent the employee from losing all or part of his just compensation by an ill-advised settlement independent of the commission's supervision. They were passed for the benefit of the employee, and not for the benefit of the employer.

To permit the defendant to rely upon the illegality of the contract by reason of the statutory provisions above quoted would deprive plaintiff of recompense for his injury because of an ill-advised settlement independent of the supervision of the commission. This is the very evil sought to be prevented by these sections, and we would be in the position of applying a legislative enactment to defeat its own purpose. Such would not only be contrary to the intent of the Legislature, but repugnant to common sense. For these reasons, defendant is not permitted to set up these statutory provisions as a defense to the relief sought by plaintiff. We are not without authority in taking this view. In the Restatement of the Law of Contracts, vol. 2, sec. 601, the rule is thus stated:

"If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed."

If, under such circumstances, the illegal bargain may be enforced, it follows that damages may be recovered for its breach. As stated in Williston on Contracts, sec. 1630:

"The rule of public policy that forbids an action for damages for breach of such an agreement is not based on the inpropriety of compelling the defendant to pay the damages: in itself that would generally be a desirable thing. When relief is denied it is because the plaintiff is a wrongdoer, and to such a person the law denies relief."

Thus, when plaintiff is considered entitled to enforce the contract, there can be no objection to also permitting recovery for a breach thereof.

The early case of Babcock v. Goodrich (1874) 47 Cal. 488, is analogous and rests upon the same basic principle. It was there contended that a contract to build a county jail was void because it did not provide that eight hours shall be a working day under it, as required by statute. But this argument was rejected for the reason that "the law was passed for the protection of the laborer; an officer of the county cannot refuse to carry out a contract because of an omission which renders the contract more favorable to the county."

An analogous principle has been applied to usury statutes declaring a certain contract "void" wherein recovery is permitted by one of the contracting parties on the ground that he is not in pari delicto. Ferguson v. Sutphen, 3 Gilman (8 Ill.) 547.

The third question under this contention is whether the contract is unenforceable for want of mutuality. It is argued that by reason of the statutory provisions the contract is not binding upon the plaintiff, and, therefore, it cannot be held to be binding upon the defendant on the theory that there must always be mutuality in a contract and it must be binding upon both parties. But where the plaintiff has fully performed a contract on his part, even though he could not originally have been compelled to do so, the defendant cannot avoid liability for his breach thereof on the ground of want of mutuality. 6 R. C. L. 690, sec. 96. Plaintiff has made a contract in settlement of his claim which has been in force for about thirteen years, and under the terms of section 7301, C. O. S. 1921, in force at the time the contract was made,

plaintiff was required to file his claim with the commission within one year after the injury, otherwise, the right to make such claim "shall be forever barred." It is not contended that the plaintiff may still file his claim with the Industrial Commission on the ground that the statute has been tolled. The defendant only asserts that the contract is void and never was enforceable against the plaintiff. Therefore, under the strict terms of the statute, unless tolled, the time has now passed when plaintiff is by law permitted to file his claim, and his promise has been fully performed. Under such circumstances it is immaterial whether the defendant originally could have enforced the contract against the plaintiff.

3. It is next urged by the defendant that the contract is not enforceable for lack of definiteness as to work or pay, and in support of this argument it cites Heckler v. Baltimore & Ohio Railroad Co. (Md.) 173 Atl. 14. In that case it is held that a contract, in settlement of a personal injury action, whereby the employer agreed that the employee "would be given steady employment by the defendant during the plaintiff's life, or so long as he was able to do work of any kind about the shops or railroad," was unenforceable for indefiniteness as to work or pay. Two of the justices dissented.

To sustain the contract as against this objection, the plaintiff cites Fisher v. Roper Lumber Co. (1922) 183 N. C. 485, 111 S. E. 857, 35 A. L. R. 1417, where the court sustained a judgment for damages for breach of contract of employment for life, in settlement of a personal injury claim, wherein the employer agreed that "if plaintiff would not sue, the company would employ him in such work as he could do about the mill in his crippled condition, and for the balance of his life, give him a living wage sufficient for support of himself and family." In the fourth paragraph of the syllabus, the court says:

"The courts look with disfavor upon the destruction of contracts on account of uncertainty, and, when possible, will so construe them as to carry into effect the reasonable intent of the parties."

Also, in Texas Cent. R. Co. v. Eldridge (Tex. Civ. App.) 155 S. W 1010, it was held that a promise to employ for life was not too indefinite, though neither the character of the services nor the compensation

was fixed, after the employee had worked for some years without dispute under the agreement. For a collection of authorities dealing with contracts for employment for life, where there is a consideration in addition to the agreement to perform the work, to support the contract, see note to 35 A. L. R. at pages 1434 to 1440; and 14 C. J. 430-432; see, also, the following authorities dealing generally with indefiniteness and mutuality of contract similar to that involved in this case: Henderson v. Spratlen (Colo. 1908) 98 P. 14; Louisville & N. R. Co. v. Cox (Ky. 1911) 141 S. W. 389; Pierce v. Tennessee Coal, Iron & Ry. Co., 173 U. S. 1, 19 Sup. Ct. Rep. 335; 6 R. C. L. pp. 643-649; Roxana Petroleum Co. v. Rice (1924) 109 Okla. 161, 235 P. 502.

In Williston on Contracts, sec. 34, it is said:

"It is a necessary requirement in the nature of things that an agreement in order to be binding must be sufficiently definite to enable a court to fix an exact meaning upon it. * * * The principle governing all such cases is the same, however, and the classification is merely for convenience. In construing such agreements a court should endeavor, if possible, to attach a sufficiently definite meaning to a bargain of parties who evidently intended to enter into a binding contract and ambiguous words in an obligation should be construed most strongly against the party who used them."

Under these authorities, and in view of the facts of this case, we hold that the contract was not void for uncertainty. The contract is sufficiently definite to enable the court to fix an exact meaning upon its terms. It implies that plaintiff should receive reasonable wages, depending upon the nature of the work he could perform and the customary rate of pay for such work in the community and at the time the work was performed. 13 C. J. 585; 18 R. C. L. 533. These are matters for the jury to determine, under proper evidence and instructions, in fixing the value of the contract to the plaintiff on its breach by the defendant. 18 R. C. L. 533.

4. The defendant complains of the refusal of the court to admit in evidence certain vouchers offered to show that the plaintiff had been paid under the Workmen's Compensation Act. Settlement was not pleaded by the defendant, and we do not believe the defendant was prejudiced by the refusal of this evidence. Furthermore, the defendant cites no authority to support this contention.

5. The defendant's last contention is that the general manager, J. M. Wintersmith, was without authority to make the contract. The record is silent as to his actual authority. The only evidence on the subject is the testimony of an employee of the defendant that he had no authority to make contracts for the company. This would imply that he had no right to make any kind of a contract. It is not contended that he had no authority to settle the claim of the plaintiff, but the contention is that in making the settlement he had no right to make a contract for life employment. We think under the circumstances he had the apparent authority to settle the claim, and the plaintiff was justified in acting on this apparent authority. Ardmore Hotel Co. v. J. B. Klein Iron Foundry (1924) 104 Okla. 125, 230 P. 734. The authorities are divided on the authority of a general manager or general superintendant to make such a contract as is involved in this case. Similar contracts were sustained in Usher v. New York Cent. & H. R. Co. (1902) 78 N. Y. S. 508, and Jackson v. Illinois Cent. R. Co. (Miss. 1899) 24 So. 874. The contrary was held in Carney v. N. Y. Life Ins. Co. (N. Y.) 57 N. E. 78, 49 L. R. A. 471, and in Maxson v. Mich. Cent. R. Co. (Mich.) 75 N. W. 459.

The defendant in its answer pleaded that the general manager was without authority to make said contract. The plaintiff in his reply pleaded ratification. The court submitted this issue to the jury and the instruction on that point was not objected to by the defendant. The evidence shows that the plaintiff filed no claim with the Industrial Commission, that he was paid during the time he was unable to work according to the Industrial Commission rates, that he went back to work on crutches, and worked at light work for thirteen years. The jury was justified in finding that the defendant knew of these facts and ratified the contract, and that if they did not know of the contract, it was put upon inquiry as to the arrangement under which the plaintiff went back to work. We think the jury was justified in finding this issue against the defendant. Fisher v. Roper Lbr. Co., supra.

Judgment affirmed.

OSBORN, C. J., and RILEY, PHELPS, and CORN, JJ., concur. BAYLESS, V. C. J., and GIBSON, J. dissent. WELCH, J., absent. DAVISON, J., not participating.