WEBB v. MORAN.

*96 P. 2d 308.*

No. 28810.   Oct. 3, 1939.

Rehearing Denied Dec. 5, 1939.

Robinson & Ogden, of Altus, for plaintiff in error.

Cecil R. Chamberlain and Robert M. Helton, of Frederick, and W. C. Austin and Robert B. Harbison, of Altus, for defendant in error.

DAVISON, J.   This action was instituted in the district court of Tillman county on the 10th day of August, 1935, by W. T. Webb, as plaintiff, against Tom Moran, as defendant. The plaintiff sought judgment in the sum of $2,100 plus interest at the rate of 8 per cent. per annum from November 7, 1930, and $200 attorneys' fees on a promissory note executed by the defendant to the plaintiff on November 7, 1930, and payable on demand.

The defendant in his answer admitted the execution and validity of the note, but sought to avoid liability by reason of an alleged existing set-off.

The cause was tried to a jury on the 6th day of October, 1937. The verdict and judgment in favor of plaintiff was for $608.90 with interest at the rate of 10 per cent. per annum from October 7, 1937. The plaintiff appeals, appearing herein as plaintiff in error. The order of appearance before the trial court is preserved in this court and our continued reference to the parties will be by their trial court designation.

It may be noted at the outset that there is a 2 per cent. discrepancy in the interest rate on the judgment and the interest rate provided in the note and requested in plaintiff's petition. Plaintiff, of course, could not complain of this error in his favor. He does not complain of his failure to separately recover interest on the indebtedness prior to judgment nor is he aggrieved because of the failure of the judgment to include any sum as attorneys' fees, although the negotiable note upon which he predicated his action contemplated such fees upon certain specified contingencies which need not be discussed.

The plaintiff urges a reversal of the trial court's decision on the theory that the agreement which defendant successfully pleaded and proved in that court was unenforceable for w a n t of consideration and void for uncertainty. He makes the additional contention that the agreement was abrogated by the defendant prior to reliance thereon. He also asserts that the trial court improperly instructed the jury in that the instructions authorized a verdict in whole or in part for the defendant upon an asserted contract fraught with the infirmities above mentioned. It may be noted in connection with plaintiff's position that he is not asserting the insufficiency of this pleading or proof to establish the agreement *as relied upon* by the defendant, but is asserting the insufficiency of the understanding between the parties as pleaded and proved by the defendant to constitute a contract at all. The questions presented have been properly preserved for review.

We, therefore, address ourselves to the agreement and breach thereof pleaded and proved by the defendant and relied upon by him as a set-off to sustain the decision of the trial tribunal in reducing plaintiff's recovery on the note.

At the time of the transactions hereinafter delineated, the plaintiff was president of, and a heavy stockholder in, the Farmers' State Bank of Tipton, Okla. The bank was involved in difficulties which threatened its continued existence as a going concern. The idea of creating a subsidiary loan or intermediate credit association as a separate legal entity was conceived. It was hoped that through this proposed instrumentality the bank might be saved and, incidentally, the general credit condition of the community strengthened. The plaintiff and others sponsored the idea and engaged in promotional activities in connection with an attempted creation of the proposed "Intermediate Credit Association."

The plaintiff contacted Tom Moran, who was his acquaintance as well as a customer of the bank. He proposed that the defendant contribute $2,000 to a fund to be used in the creation of the proposed association, assuring him at the time that he (the defendant) would be able to borrow money from the association at a low rate of interest. The defendant did not have any appreciable amount of available cash. He did, however, have some cotton which he was holding for a higher price than the then prevailing market. He expected to realize 10 or 12 cents per pound for the cotton.

In view of the foregoing situation, the parties entered into an oral agreement, whereby the defendant agreed to deliver to the plaintiff or the bank, of which plaintiff was president, 95 bales of cotton to be shipped by the plaintiff to a cotton concern at Houston, Tex., to be there held and margined as defendant's cotton until the market reached a point where the defendant would realize not less than 10 cents per pound. The plaintiff undertook to protect the "marginal" cotton and see that it was not sold until its sale would enable the defendant to realize the price stipulated. It was un-

derstood that the Houston concern would advance to the defendant $20 per bale on the cotton, and that the money received would be delivered to the plaintiff for the purpose of assisting in the creation of the Intermediate Credit Association.

In accordance with this agreement, the defendant delivered his cotton as stipulated and received the advance in the sum of $1,900, which, incidentally, was somewhat less than the then market value (about $8.50 per bale). He (the defendant) added $100 to the sum thus received, and on December 17, 1931, delivered $2,000 to the plaintiff for the purpose agreed upon.

The Intermediate Credit Association enterprise did not materialize as expected and by mutual agreement the money so subscribed was turned back to the defendant as well as to other subscribers. In a subsequent conversation between the parties, the plaintiff recognized his continued obligation to protect the margined cotton. This, according to the proof, he failed to do, and the cotton, without the knowledge of defendant and while he was relying upon the protection to be afforded by the plaintiff, was sold by the Houston concern on a low market, as the result of which the defendant realized nothing in excess of the $1,900 previously received, except a possible $52 which he was not sure about. Subsequently, and on the 12th day of July, 1933, the market reached a stage where defendant could have realized 10 cents per pound had the cotton still been available for sale. The defendant claimed damages for breach of contract by reason of plaintiff's failure to protect the cotton from sale at the instance of the Houston cotton dealer.

The plaintiff asserts that his agreement to protect the cotton was not binding because it was without consideration. It is argued that under the agreement, no consideration did or "would flow to the plaintiff." Plaintiff seems to be laboring under a misconception of the breadth of the meaning of consideration as that term is used in the law of contracts. He apparently is of the impression that it was essential to the existence of the contract that the plaintiff should have actually received some benefit by reason thereof. Section 9440, O. S. 1931 (15 Okla. St. Ann. § 106), provides:

"Any benefit conferred, or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, *or any prejudice suffered* or agreed to be suffered by such person *other than such as he is at the time of consent lawfully bound to suffer,* as an inducement to the promisor, is a good consideration for a promise."

Thus it is not essential that a party against whom enforcement of a contract is sought should have been actually benefited. It is sufficient consideration if the party seeking to assert liability upon the contract has suffered or agreed to suffer some detriment. Ball v. White, 50 Okla. 429, 150 P. 901. With this conception of consideration in mind, it is at once apparent that plaintiff's contention is without merit. The defendant by virtue of the contract agreed to and did part with the possession and control of 95 bales of cotton, a thing which he was not otherwise lawfully bound to do. The trial court correctly refused to approve plaintiff's argument on this point.

The plaintiff contends that the contract was abrogated by the defendant when by mutual agreement the $2,000 which he had delivered to the plaintiff was returned to him.

It is, of course, axiomatic that the parties to an existing contract may subsequently enter into a valid agreement to extinguish, rescind, or modify the former contract. 12 Am. Jur. par. 431, p. 1011; 12 Am. Jur. 983, par. 405; Appleman et al. v. Pepis, 117 Okla. 199, 246 P. 225. But, as with any other agreement, the contract to rescind must be by mutual consent of the parties. We find nothing in defendant's evidence to indicate that an agreement was made to extinguish or rescind the former agreement when defendant's money was returned to him. On the contrary, specific proof

was offered that plaintiff reiterated his agreement to protect the marginal cotton. If it may be accurately said that defendant's agreement to subscribe to the Intermediate Credit Association was a part of the contract with which we are here concerned, as distinguished from the background which induced the contract, then it may be appropriately said that the larger or entire agreement was modified by the subsequent executed agreement by which the money was returned. However, such modification did not amount to an agreement to extinguish the agreement with reference to the cotton, and it did not so operate. In so holding the trial court was correct.

Plaintiff alleges that the contract was void for uncertainty. Under this contention plaintiff points out three respects in which the contract is said to be uncertain that will be separately considered. The agreement is asserted to have been deficient in that (a) the parties failed to specifically agree at what geographic point the determining market price would be governed by, that is, Tipton, Okla., Houston, Tex., or some other point; (b) that it failed to provide for the repayment to the plaintiff of any marginal advancement by him; and (c) that the contract made no specific provision for the time it was to run, that is, the duration of time during which the plaintiff was to protect the marginal cotton against sale.

Preliminary to our consideration of these specific contentions, it is proper that we pause to consider the rules by which we are to be guided.

It is appropriate to recognize at the outset of our discussion on this point that even though the agreement was unenforceable for uncertainty, the defendant would not necessarily be remediless, in view of the fact that by reason of the agreement he has parted with his cotton. Such performance on his part would not make a fatally indefinite promise enforceable, but it might give rise to a "quasi-contractual obligation to pay the fair value of the thing received."

Williston on Contracts, Revised Edition, vol. 1, page 139. However, since defendant predicates his right to a set-off on the contract, as distinguished from a quasi-contractual obligation, further discussion of this phase of the law is not essential.

In determining whether a contractual promise is fatally defective for indefiniteness, it is important to observe that the law frowns upon invalidating the agreement of the parties upon this consideration, especially where there has been a part performance. Harlow Publishing Co. v. Patrick, 181 Okla. 83, 72 P. 2d 511; Oklahoma Portland Cement Co. v. Pollock, 181 Okla. 266, 73 P. 2d 427.

In the latter case, we said in par. 5 of the syllabus:

"The courts look with disfavor upon destruction of contracts on account of uncertainty, and when possible, will so construe them as to carry into effect the reasonable intent of the parties."

And in Harlow Publishing Co. v. Patrick, supra, it was stated in paragraph 2 of the syllabus:

"A contract is not void for uncertainty, even though it does not enter into all the details with respect to its subject matter, if, according to its terms, it is sufficiently definite so that it can be ascertained with a reasonable degree of certainty what the parties intended to agree to."

These rules constitute judicial application of the statutory mandate contained in section 9467, O. S. 1931 (15 Okla. St. Ann. § 159), which provides:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."

Similarly, if uncertainty exists in the meaning of a contract, doubt as to its meaning may be removed by reference to the circumstances under which it was executed. Section 9471, O. S. 1931 (15 Okla. St. Ann. § 163).

Did the failure of the parties to specifically agree upon the place where the market price would be determined create a fatal uncertainty? We think not. Any uncertainty upon this point is readily resolved by reference to the circumstances under which the contract was executed. The defendant was holding his cotton for a better market in the hope of receiving 10 cents per pound for it. Thus, whatever market would enable him to realize that sum would be the controlling market. The parties contemplated a shipment of the cotton to Houston. We are of the opinion that under the circumstances as stated by the defendant, it was the contractual duty of the plaintiff to protect the cotton against sale until the same could be sold at Houston on a market that would enable the defendant to receive 10 cents per pound net at that point. It is also quite possible that plaintiff could have discharged his obligation by arranging for a sale at another point for a price sufficient to enable defendant to receive the minimum net price stipulated. In view of the circumstances under which the contract was executed, we perceive no uncertainty incapable of elimination in the matter of determining the governing market.

In connection with the failure of the parties to specifically agree who was to bear the expense of keeping the cotton margined to protect against sale, we think it may be fairly implied from plaintiff's promise that he would afford that protection; that he would bear the expense incident thereto. This conclusion is strengthened by the declared purpose of the arrangement which was to enable the defendant to raise money for the purpose of investment in an enterprise being promoted by the plaintiff and at the same time realize upon a future contemplated rise in the market. The contract was not void for uncertainty as a matter of law upon this consideration. The trial court properly declined to so hold.

The third alleged ground of fatal indefiniteness asserted by the plaintiff was the failure of the parties to specify the time the cotton was to be held in anticipation of a possible increase in price. This did not render the contract void, since the law intervenes to imply a reasonable time for performance. Section 9481, O. S. 1931 (15 Okla. St. Ann. § 173), provides:

"If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly, as, for example, if it consists in the payment of money only, it must be performed immediately upon the thing to be done being exactly ascertained."

The question of what constitutes a reasonable time is ordinarily a question of fact and may be presented to the jury as such. Newman v. Roach, 140 Okla. 210, 282 P. 287. Thus, the absence of a specific stipulation upon the point did not, as plaintiff contends, authorize the trial court to declare the contract void for uncertainty as a matter of law.

Complaint is also made concerning the trial court's instructions on the theory that recovery was thereby authorized on a contract which should have been judicially declared unenforceable for uncertainty and want of consideration. Since, as we have seen, plaintiff is mistaken in this major premise, the criticism of the instructions is not well taken.

The judgment of the trial court is affirmed.

BAYLESS, C. J., and CORN, HURST, and DANNER, JJ., concur.