**Clifford JAMES, Petitioner,**

v.

**VERNON CALHOUN PACKING COM-PANY, Respondent.**

**No. B–3708.**

Supreme Court of Texas.

July 25, 1973.

A. D. Henderson, John B. McDonald, Palestine, for petitioner.

B. R. Reeves, Palestine, Ramey, Brelsford, Flock, Hutchins & Carroll, Jack W. Flock and Mike A. Hatchell, Tyler, for respondent.

WALKER, Justice.

Clifford James brought this suit against his former employer, Vernon Calhoun Packing Company, to recover damages for breach of an alleged contract for lifetime employment. Special exceptions to plaintiff's petition were sustained by the trial court. When plaintiff failed to. amend within the time allowed by the court, the suit was dismissed. The Court of Civil Appeals affirmed. 486 S.W.2d 396. We affirm.

According to the allegations of plaintiff's petition, he was formerly employed by defendant packing company, which carried workmen's compensation insurance. On May 29, 1962, he sustained a compensable injury while in the course and scope of his employment and gave timely notice of the injury. Defendant urged plaintiff not to file a claim for compensation and promised that if he did not do so he would be given light work as a supervisor of boning operations and would be retained in that position as long as he lived or desired to work. Plaintiff accepted the offer and did not file a claim for compensation. He was employed by defendant as supervisor of boning operations for over seven years. At the end of that period he was returned to the actual boning of meat. He was unable to do this work satisfactorily and was discharged in violation of the agreement.

■ Plaintiff asserted two theories of recovery, fraud and breach of contract. Defendant filed special exceptions to the fraud allegations urging: (1) that no cause of action was stated and (2) that the damage allegations were vague and general, failed to set up a proper measure of damages, and did not apprise defendant of the proof it would be required to meet or the measure of damages relied upon by plaintiff. All of the exceptions were sustained by the trial court. Since the ruling on the second exception mentioned above was not brought forward for review, it is unnecessary to consider the fraud count. We do not attempt to determine whether there might be a cause of action for fraud against an employer who induced an employee to forego a claim for compensation by making promises known by the employer to be unenforceable.

■ Plaintiff did bring forward for review a ruling by the trial court that the alleged agreement is unenforceable. This ruling is based upon and fully supported by Woolsey v. Panhandle Refining Co., 131 Tex. 449, 116 S.W.2d 675, where an employee was denied a right of recovery for breach of a similar agreement. The contract was held to be unenforceable by vir-

tue of Art. 8306, § 14 Vernon's Ann.Civ. St., which provides:

> No agreement by an employé to waive his rights to compensation under this law shall be valid.

The application for writ of error in the present case was granted with the view of reexamining our decision in *Woolsey*. After further consideration, we have concluded that the holding is not so unsound that the case should be overruled after these many years. The statute could mean simply that the employee may disaffirm the agreement at his option. It could also mean, as held in *Woolsey*, that the entire agreement is invalid. The latter construction was adopted in the belief that it better serves the policy of the state as declared in the Workmen's Compensation Law.

■ The statute provides an exclusive *remedy for those who accept its provisions*, fixes the compensation to be paid an employee who is injured in the course of his employment, permits him to collect from his employer's insurance carrier, which will ordinarily be subject to both process and execution, and requires that a lump sum settlement be approved by the Board. This plan and scheme will be frustrated in many instances if an injured workman is allowed to choose between the compensation benefits provided by law and a private settlement offered to him by his employer. In view of the employer-employee relationship, the relative bargaining position of the parties, and the fact that the full extent and effect of injuries cannot always be determined promptly, it seems likely that a substantial number of employees would ultimately regret having waived their compensation benefits to obtain settlements that later prove to be either inadequate or uncollectible.

As noted by the Court in *Woolsey,* the holding that the contract is unenforceable undoubtedly works a hardship on an employee not familiar with the law who has made an advantageous settlement. It

would be quite anomalous, however, to say that a statute must be given a particular interpretation to avoid hardship to one who acts in ignorance of his legal rights. The construction adopted in *Woolsey* is calculated to prevent injured workmen from *making unfortunate settlements of their claims.* It is for this reason that the Court concluded that its holding would be far less disastrous to the great army of employees operating under the Workmen's Compensation Law than to allow an employee to enforce a contract in which he bargained away his rights under that law.

The following excerpt from the opinion in Employers' Indem. Corp. v. Woods, Tex.Com.App., 243 S.W. 1085, is quite pertinent:

> We are much impressed with the idea that there is a large element of public interest in the administration of this Compensation Act. The only body which can protect the public is the Accident Board. It would be idle to expect the employer or the insurance company to exercise any particular degree of care in behalf of the public. Their natural desire would be to get rid of the claim as economically as possible to themselves. It is also true that the injured employee is frequently tempted to accept a sum which, paid all at once, looks large to him, and thereby, in fact, "sell his birthright for a mess of pottage." The Accident Board alone can protect the public interest and in a large measure save these claimants from themselves. Many of them do not need this protection. If so, the supervision of the Accident Board, at least, does no harm. To those who do need it, the supervision is exceedingly valuable.

■■ We are dealing here with a statute, and the doctrine of stare decisis has its greatest force in the area of statutory construction. See Marmon v. Mustang Aviation, Inc., Tex.Sup., 430 S.W.2d 182; Moss v. Gibbs, Tex.Sup., 370 S.W.2d 452; Rowe v. Spencer, 70 Tex. 78, 8 S.W. 60.

The Legislature has met in regular session eighteen times since *Woolsey* was decided in 1938, and the statutory provision in question has not been changed. In these circumstances and since the construction adopted 35 years ago is entirely reasonable, it is our opinion that the meaning of the statute should not be changed now except by legislative enactment.

The judgments of the courts below are affirmed.

Dissenting opinion by SAM D. JOHNSON, J., joined by STEAKLEY and REAVLEY, JJ.

DANIEL, J., notes his dissent.

SAM D. JOHNSON, Justice (dissenting).

This dissent, respectfully submitted, emanates from the harshness of the rule in *Woolsey*, the harshness of that rule's application for over thirty-five years against injured and misled workmen, and the harshness of that rule as applied against Clifford James, the injured workman here.

The order of dismissal was predicated on the trial court's action in sustaining defendant's special exceptions directed at plaintiff's pleadings.[1] We must therefore assume the facts as they are alleged in the plaintiff's petition. Clifford James, the employee, suffered serious and accidental injuries while working for Vernon Calhoun Packing Company. The Company was fully covered by a policy of workmen's compensation insurance. The Company urged James not to file a claim for compensation and promised that if he did not do so he would be given lighter work, which he would be capable of performing, and lifetime employment. Upon such representations and inducements James accepted the Company's offer and was given the lighter employment. Seven years later, *after* the time in which he could file his claim for workmen's compensation, and long *after* the time in which good cause might be shown for not filing, the Company reneged on its promise and discharged James. Though the agreement between the Company and James was fully executed, it is now, on the authority of *Woolsey*, held to be "illegal and void."

In *Woolsey*, the plaintiff alleged, as James here, that he sustained an on-the-job injury compensable under the Workmen's Compensation Act, but that he was induced not to file a claim for such injury because of his employer's promise of lifetime employment at his current salary. This court there held that a general demurrer to the employee's petition was properly sustained because the alleged employment contract "violates a valid statute" and so was "illegal and void, and cannot be enforced." 116 S.W.2d at 678.

When a promise, itself legal, is made on consideration of a return promise which is illegal, the legal promise will generally not be enforced. 6A Corbin, Contracts § 1521 (1962). It was upon that broad principle, applied to the proposition that the *workman's* return promise to waive his rights under the workmen's compensation law was *illegal*, that the court in *Woolsey* refused to enforce the employer's entirely legal promise of lifetime employment. There must be substantial doubt of the proposition that the workman's promise to waive is "illegal," in any sensible usage of that term, simply by virtue of the declaration of the statute. 6A Corbin, Contracts § 1377 (1962). Assuming, arguendo, that the workman's promise was illegal, it is quite clear that even an illegal bargain may sometimes be enforced. *E. g.*, Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146 (1947); Graham v. Dean, 144 Tex. 61, 188 S.W.2d 372 (1945); American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397 (1921); 14 Williston, Contracts § 1630A (3d ed. 1972). The statement in *Woolsey* that the facts of the case do not fall within

---

1. Plaintiff declined to amend; plaintiff's suit was therefore dismissed.

any exception to the general rule is incorrect.

The enforcement of the Company's promise may be permitted under the principle set out in The Restatement of Contracts § 601, which principle was approved and applied in Hughes v. Hess, 141 Tex. 511, 172 S.W.2d 301 (1943). That section states:

> "If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed."

It is quite clear the Texas compensation act was enacted for the benefit of employees and that § 14 is intended to protect the *employee* from the binding force of an injudicious settlement of his compensation claim, absent supervision and assistance of the Industrial Accident Board. *See also* Art. 8307, § 12; Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081 (1935).

The Supreme Court of Oklahoma, in deciding the very similar case of Oklahoma Portland Cement Co. v. Pollock, 181 Okl. 266, 73 P.2d 427, 430 (1937) in favor of the injured workman stated:

> "To permit the defendant to rely upon the illegality of the contract by reason of the statutory provisions above quoted would deprive plaintiff of recompense for his injury because of an ill-advised settlement independent of the supervision of the commission. This is the very evil sought to be prevented by these sections, and we would be in the position of applying a legislative enactment to defeat its own purpose. Such would not only be contrary to the intent of the Legislature, but repugnant to common sense."

The Supreme Court of Indiana in Toni v. Kingan & Co., 214 Ind. 611, 15 N.E.2d 80, 85 (1938) in a similar case also decided for the workman, concluded:

> "It would be a harsh rule of law that would prevent the appellant, under the circumstances disclosed, from pursuing an action upon such a contract as alleged. The appellee by its conduct and acts led the appellant to believe that he was secure in a life time employment and after a long period of time after the statute of limitation had run for filing a claim for compensation he was then discharged and the contract, if any, repudiated."

The fallacy of the court's reasoning in *Woolsey* is in the premise of mutuality of obligation: if the employer's promise of lifetime employment is to be enforced, then the employee's promise must also be enforceable. Such a premise is clearly erroneous since Woolsey, like James, had fully performed his promise (i. e., waived his rights to compensation) at the time the lawsuit arose. Once a plaintiff has performed a contract on his part, even though he could not have been compelled to do so, the defendant cannot avoid the obligations of his promise on the basis of want of mutuality of obligation. Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487 (1943). 6 R.C.L. 690 § 96, recites:

> "Notwithstanding the fact that a contract contemplates that something is to be done by both parties, it is not void for want of mutuality even though it is not binding on one of the parties where such party has given a consideration in addition to his promise. This question has often arisen in cases where, in consideration of the release from liability for injuries received, an employer agrees to give his injured employee steady and permanent employment, or for a definite period, without exacting from the employee the corresponding promise to remain for such designated period. It has, however, been universally held in these cases that such contracts are mutual and therefore binding upon the employer."

From the foregoing we think it absolutely clear that the argument made in *Wool-*

*sey,* and endorsed by the majority here, that the executed contract is "illegal and void" because it violates a valid statute is untenable. The Workmen's Compensation Act was enacted for the benefit and protection of employees; it was not designed to victimize the working man.

Even more compelling for the disposition of this case is the harshness of the result reached by the court in following *Woolsey.* On whom, it must be asked, does the lash of the court's holding fall? The Company here, as the employer in *Woolsey,* by its wrongful representations and inducements obtained exactly what it sought: the workman's claim for compensation was thwarted until it became extinct. Subsequently, the workman was discharged from the promised employment. The Company is now held to be immune for its wrongful acts. The now unemployed workman, on the other hand, stands stripped of his claim for compensation, precluded from showing "good cause" by the passage of over seven years, and foreclosed in his rightful claim against the Company for its wrongful acts. It is this kind of wholly inequitable result which is criticized in 14 Williston, Contracts § 1630A (3d ed. 1972), wherein it is said:

> "But to assert, as some courts have, that all unlawful agreements are *ipso facto* void is opposed to many decisions and unfortunate in its consequences, for it may protect a guilty defendant from paying damages to an innocent plaintiff."

Aside from the harshness of the result, the protection of "a guilty defendant from . . . an innocent plaintiff," are the results really calculated, as stated by the majority of this court, to prevent injured workmen from making unfortunate settlements of their claims? As illustrated, the whole burden is placed not on the offending employer but on the workman. The *Woolsey* court relied on standard language; the plaintiff "was presumed to know the law that had been enacted for his benefit" and, hence, realize that his agreement was unenforceable. 116 S.W.2d at 678. The fallacy of that assumption is evident in this case. By means of this assumption a statute designed to protect an employee instead is construed to entrap him, and thus encourages and licenses employers to engage in these deceitful practices. The result which should be sought is that which would place the burden on the guilty party, that which would prevent the evil itself, that which would inhibit and penalize the sponsor of the wrongful representations and inducements.

There is no force to the argument that the plan and scheme of our workmen's compensation laws will be ". . . frustrated in many instances if an injured workman is allowed to choose between the compensation benefits provided by law and a private settlement offered to him by his employer." As long as the compensation claim survives the employer has a *defense* to the workman's suit on the employment contract; there is no mutuality of obligation; the workman cannot be forced to perform his *executory* promise and the employer cannot be held to his promise. To encourage compliance with § 14, the court should not allow employers who induce agreements in violation thereof to escape liability.

*Woolsey* should be overruled. The judgments of the courts below should be reversed and this cause should be remanded for trial.

STEAKLEY and REAVLEY, JJ., join in this dissent.