**WATT PLUMBING, AIR CONDITIONING AND ELECTRIC INC., a/k/a Watt Electric Co., a corporation, Appellant,**

v.

**TULSA RIG, REEL & MANUFACTURING COMPANY, a corporation, et al., Appellees.**

No. 46340.

Supreme Court of Oklahoma.

March 18, 1975.

Gerald E. Kamins, G. C. Spillers, Jr., Tulsa, for appellant.

Conner, Winters, Ballaine, Barry & McGowen by Horace D. Ballaine and Russell H. Harbaugh, Jr., Tulsa, for appellee Tulsa Rig, Reel & Manufacturing Co.

Jones, Givens, Brett, Gotcher, Doyle & Atkins, Inc. by Thomas R. Brett, Jack R. Givens, and T. J. Sinclair, Tulsa, for appellee St. Francis Hospital Inc.

HODGES, Vice Chief Justice.

Watt Plumbing, Air Conditioning and Electric, Inc. (Watt) has appealed from two separate orders of the trial court. The trial court sustained in part the motions of St. Francis Hospital, Inc., (St. Francis) and Tulsa Rig, Reel Manufacturing Company (Tulsa Rig) for summary judgment. The court also sustained the demurrer of St. Francis to Watt's amended petition which alleged that St. Francis was liable to Watt for work performed on a quantum meruit basis.

This litigation arose out of the construction of a wing to St. Francis Hospital in Tulsa, Oklahoma. On August 22, 1966, St. Francis entered into a construction contract with Tulsa Rig. On August 22, 1966, Tulsa Rig entered into a subcontract with Watt under which Watt was to perform the electrical services required by the project.

During the course of construction, there were 394 proposed changes in the plan of which 236 were approved.

The general contract between St. Francis and Tulsa Rig, and the electrical subcontract between Tulsa Rig and Watt contained provisions providing that changes in the plans or in the work might be made.

The contract between Tulsa Rig and Watt provided:

"Contractor may at any time during the progress of the work make any additions to alterations in, or deviations from the work as shown by the drawings or specifications or revisions therein without invalidating this contract, and if such additional work alterations, or deviations shall result in any additional work or in that event the fair and reasonable value of such additional work or omission of work shall be added to, or deducted from the amount herein agreed to be paid by the contractor, PROVIDED, HOWEVER, that no additional work shall be considered an extra unless the same shall be done in pursuance of a written order signed by the contractor. Additional time shall be granted for additional work as agreed upon by the architect, contractor and subcontractor."

Watt agreed with Tulsa Rig separately upon the price for which it would make each change before any of the changes were made. The procedure pertaining to each change was that: Each change was initiated by St. Francis through the Architects, who requested a quotation from Tulsa Rig of the price for which it would

make the change. Upon receipt of each request for a change, Tulsa Rig requested a quotation from Watt, as to the price for which they would perform their portion of the change if St. Francis should accept Tulsa Rig's quotation for the change. In response Watt gave Tulsa Rig a quotation of the price for which it would perform the change. After the quoted price was received it was either accepted, or if not accepted, a price for the performance of such change was negotiated and agreed upon between Watt and Tulsa Rig for which Watt agreed to perform the change if Tulsa Rig's quotation to St. Francis should be accepted. Watt was notified when St. Francis had entered into the agreement with Tulsa Rig in regard to each change. Watt thereafter performed the change, made application to Tulsa Rig for payment of the agreed price and the same was paid to and accepted by Watt.

After the completion of the contract, Watt sued Tulsa Rig and St. Francis for damages. One of the grounds alleged was that the changes which had been made were unreasonable and excessive in number and quantity, that they had not been within the contemplation of the parties when the subcontract had been made, and that therefore, the implied terms of the contract had been breached. Watt also alleged that the changes which had been made were not within the scope of the original contract and that this also constituted a breach of contract.

Tulsa Rig filed a motion for summary judgment which was joined by St. Francis. In the motion, Tulsa Rig alleged in substance that the facts concerning contractual changes were not in dispute. It alleged that since Watt had separately agreed to make each change for a price which it agreed upon, and had made the change and accepted payment, it could not assert that the very agreements which it had made constituted a breach of the contract. It was further alleged that since Watt had known that the price for which

it agreed to perform the change would be relied upon by Tulsa Rig when it entered into an agreement with St. Francis to make such change, Watt was estopped to assert that the changes constituted a breach of contract.

Watt filed a Response to the motion and an amendment to the Response. Watt alleged that the changes were so abnormal, excessive, inordinate, and not within the contemplation of the parties at the time the contract was executed, that they represented a cardinal change and were outside the scope of the electrical subcontract and constituted a breach of the contract, by Tulsa Rig and that it had resulted in unjust enrichment to St. Francis.

The court entered its order after all parties were given the opportunity to introduce evidence, and after the motion had been briefed and argued. The order found that there was not substantial dispute as to the facts, and that as a matter of law the approved changes performed by Watt did not constitute of themselves a breach of the subcontract, because Watt had separately agreed to perform each change for an agreed price. The court also concluded that the cardinal change doctrine was not applicable where the subcontractor agrees to perform for an agreed price the changes alleged to constitute a cardinal change.

■ It is asserted by Watt that excessive changes such as were not within the contemplation of the parties and are outside the scope of the contract give rise to a cause of action for breach of contract. Tulsa Rig and St. Francis counter this assertion with the argument that parties by mutual agreement may make as many changes in a contract as they desire, even though such changes may not have been within the original contemplation of the parties, and even though the scope of the contract may be changed thereby. They argue that a valid alteration of a contract cannot constitute breach of contract, and that it cannot constitute a breach of contract where each change and the price

thereof has been agreed upon by the parties before it is made. They state that each change when agreed upon in writing, or when executed and paid for if the agreement was oral, constitutes a valid alteration or amendment of the contract which is specifically permitted by 15 O.S. 1971 § 237. We agree.

It is provided by 15 O.S.1971 § 237 that a contract in writing may be altered by a contract in writing or by an executed oral agreement.

 It is axiomatic that by mutual assent parties to an existing contract may subsequently enter into a valid contract to modify the former contract provided there is consideration for the new agreement. An alteration of a contract cannot constitute a breach of contract because it becomes a part of the contract. The contract as altered is the agreement between the parties. Webb v. Moran, 186 Okl. 140, 96 P.2d 308, 311 (1939); Coston v. Adams, 203 Okl. 605, 224 P.2d 955, 961 (1950); Richardson v. Lawler, 204 Okl. 484, 231 P. 2d 671 (1951).

Watt cites several U. S. Court of Claims cases which hold that changes outside the scope of the contract constitute a breach. These contracts, however, contained provisions entirely different from the ones utilized in this case, and are therefore not applicable.

Watt also contends that its acceptance of the contract price as well as the agreed price for changes does not keep it from maintaining an action for breach of contract. This argument is not persuasive, however, because the agreements by Watt to make changes for an agreed price did not constitute a breach of contract. These changes were valid alterations to the contract, and became "the contract."

Affirmed.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER, BARNES and DOOLIN, JJ., concur.