HENRY KEEP HOME v. MOORE, Adm'r.

No. 32014. Jan. 28, 1947.

*176 P. 2d 1016.*

E. C. Stanard, Leonard Carey, and Norton Stanard, all of Shawnee, for plaintiff in error.

W. E. Utterback and Pricilla W. Utterback, both of Durant, and E. Moore, of Coalgate, for defendants in error.

HURST, C.J. This is an action for specific performance of a contract to convey land prosecuted against T. H. Moore, administrator of the estate of Annette Pahud, deceased.

The plaintiff, The Henry Keep Home, was incorporated by the Legislature of New York as a charitable corporation, with power to take and hold, by purchase, devise, bequest or gift, real and personal property for its uses and purposes. The plaintiff maintains a home for aged persons, and keeps on an average of about 35 persons, with a waiting list at all times. One of its rules for admission to the home is that applicants shall agree to convey to it all their real and personal property, whether much or little. On November 5, 1935, Annette Pahud made application for admission to the home. The rules for admission were fully explained to her. She was then about 80 years of age. In her application she stated that she was in good health, had had no serious illness during the past ten years, and that her nearest relatives were two cousins in Switzerland, with whom she had no financial relations. She listed as her property bank deposits and corporate stocks and bonds aggregating about $10,000. She owned mortgages on some Oklahoma farms that had been sold for

taxes and a tract of land consisting of 130 acres in Coal county, known as the Piercy tract, that she acquired in 1934 in lieu of mortgage foreclosure, which is the land involved in this case. The Oklahoma properties were considered by her as being of little or no value. The application contained this provision:

"Having passed the required physical and mental examination for admission, I am aware of the facts that the admission fee of $1,000.00 is to be paid in advance and that all my real and personal property in entirety is to be given absolutely to the Henry Keep Home, the income therefrom during my lifetime being returned to me for my personal use. At Savings Bank int. in force at time of payment. I am aware also that final admission is made only after a probation period of six months or more after the date of my arrival at the home, and should the trustees deem it for the best interests of the home at any time during this probation period to refuse admission that my admission fee, less a reasonable amount for board during my residence at the Home, will be returned, together with such other property as has been turned over to the Henry Keep Home by me. $15.00 per week for board and such medical expenses, etc., that has been incurred."

Her application was accepted and she remained in the home until her death on December 8, 1938, receiving the benefits of the home, including room, board, clothing, nursing, and medical care. She was buried at plaintiff's expense. At the time she entered the home she turned over to the plaintiff her property, including the mortgages and abstracts on the Oklahoma properties, and these properties were serviced by the Watertown National Bank, Watertown, N. Y. She executed no deed to the plaintiff covering the land here involved, and plaintiff did not request her to do so. The land was leased for oil and gas by Miss Pahud in 1934 and the taxes were then paid up on it out of the consideration received for the lease. In 1937, after a personal investigation by a representative of plaintiff, said land was set up on the books of the plaintiff at

a nominal value of $100. The plaintiff paid taxes on the land in 1936, 1939, and 1940. C. E. Bowlby, of Shawnee, Okla., looked after renting the land and paying the taxes for other years and making reports to the Watertown National Bank.

Rex Moore, a dealer in oil properties, learning that a well for oil and gas purposes was being drilled near the land, went to Watertown, N. Y., and contacted plaintiff, but was unwilling to pay it $1,000 for a quitclaim deed to the property, and he then contacted the relatives of Miss Pahud in Switzerland and made a contract with them under which he was to pay all expenses of suit to enforce their rights to the land for one-half of the land.

The plaintiff filed an application in the probate proceeding pending in Coal county on the estate of Miss Pahud to secure an order for the administrator to execute to it a deed to the land under authority of 58 O. S. 1941 §§501-511. That application was denied and this action was then instituted under authority of 58 O. S. 1941 §506.

From a judgment in favor of the defendants, the plaintiff has appealed.

In support of its argument that it is entitled to specific performance, the plaintiff argues (1) that it has authority, both under its charter and under 18 O. S. 1941 §588, to take and hold real estate, (2) that the contract having been fully performed by it, the defendant cannot successfully urge that it lacks mutuality or is indefinite and uncertain, (3) that the contract, having been signed by Annette Pahud, is enforceable without having been signed by it, and (4) that the contract is not in violation of the statute of frauds.

The defendants argue that the plaintiff is not entitled to have specific performance because, (1) the contract is indefinite, uncertain, and lacks mutuality, (2) the contract is unjust, unfair and unconscionable, (3) the rights of the heirs of Annette Pahud have intervened, and (4) the contract did not

cover the land in question. They do not question the right of the plaintiff to take title to and own real estate in this state.

1. We find no merit in the contention of the defendants that the contract will not be enforced because it lacks definiteness and mutuality. It relies upon authorities that have to do with *executory* contracts. The contract here is fully executed insofar as the plaintiff is concerned. The rule as to *executed* contracts is that when a party fully performs his part of the contract and the opposite party receives the benefits of such performance, the elements of definiteness and mutuality are supplied and it then becomes a binding contract. Sherbondy v. Tulsa Boiler & Machinery Co., 99 Okla. 214, 226 P. 564; Livingston v. Blair, 104 Okla. 238, 231 P. 82; Webb v. Moran, 186 Okla. 140, 96 P. 2d 308. And this is the general rule. 49 Am. Jur. 52.

2. The defendants cite Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 P. 545, 138 Am. St. Rep. 942, in support of their contention that the plaintiff should not have specific performance because the contract is unjust. They call attention to the fact that Miss Pahud was 80 years of age at the time she entered the home and that she had a short life expectancy and lived only about three years, and that the plaintiff received more than $10,000 worth of property for caring for and burying her. Her life expectancy was then about 4.39 years. 41 C.J. 216. We are not impressed with this contention. She was fully advised of the rule that applicants had to turn over all their property to the plaintiff, and she consented to such rule. The plaintiff, as a charitable institution, was financed partly by such conveyances. It took the chance of being underpaid in the event she lived for many years, and required much nursing and medical care, and she took the chance of overpaying plaintiff if she should live but a short time.

The general rule is that specific performance will not ordinarily be denied because of events occurring after the contract is made which tend to show that the contract is unjust, such as change in value, but the unfairness must be determined as of the date of the contract. 49 Am. Jur. 78, 79; Pomeroy's Equitable Remedies (2d Ed.) §2219; 65 A. L. R. 72, annotation.

3. Under their third contention, the defendants point out that plaintiff could have demanded a deed at any time after the application of Miss Pahud for admission to the home was accepted, and that it waited until 1943 to commence this action, and that in the meantime the rights of the heirs and devisees of Miss Pahud have intervened, and that plaintiff is barred by its laches. It cites cases to the effect that specific performance may be refused where the parties have breached or abandoned the contract. But the plaintiff carried out its part of the contract, and its acts in setting the land up on its books at a valuation of $100 and in paying taxes thereon are consistent with its claim of ownership and are inconsistent with an intention of abandonment. Under the application signed by Miss Pahud, she was entitled to receive all the income from the property during her lifetime. Miss Pahud never repudiated the transaction during her lifetime, and there was no occasion for the plaintiff to insist upon a formal conveyance, which is a sufficient excuse for its failure to do so. The contract vested the equitable title in the plaintiff. Furthermore, the cousins have suffered no detriment by the failure of the plaintiff to secure a conveyance. We find no merit in this contention.

4. While it is true that the parties considered the Oklahoma property of little or no value, yet the rules of the plaintiff, to which Miss Pahud consented when she signed the application, were that she was to transfer to it all of her property, whether specifically described or not. This land belonged to her at the time, and it was included in the property to be transferred. The fact that it was considered to be of little or no value does not detract from the effect of the contract represented by the application

signed by Miss Pahud followed by performance of the conditions by the plaintiff.

Judgment reversed, with directions to enter judgment for the plaintiff.

DAVISON, V.C.J., and OSBORN, BAYLESS, CORN, GIBSON, and ARNOLD, JJ., concur. RILEY and WELCH, JJ., dissent.