Lima CHISUM et al., Plaintiffs in Error,

v.

Jack HOLBROOK et al., Defendants in Error.

No. 36153.

Supreme Court of Oklahoma.

Sept. 21, 1954.

Rehearing Denied Dec. 21, 1954.

Application for Leave to File Second Petition for Rehearing Denied April 19, 1955.

Orval Grim, Sayre, Robinson & Oden, Altus, for plaintiffs in error.

Wise & Ivester, Sayre, for defendants in error.

BLACKBIRD, Justice.

In 1945, Frank Ragsdale, a farmer of Beckham County, owned five quarter-sections of land in said county, was heavily in debt, and was adjudged a bankrupt in proceedings he filed in the Federal Court under the Frazier-Lemke Act, 11 U.S.C.A. § 203. At the time of his wife's death in June, 1947, he had five children, all of whom were grown and married daughters. One of his daughters, Dicie, had married Jack Holbrook, one of his tenants. As Ragsdale was then approximately eighty-five years of age, in poor health and physically incapable of looking after his own needs, Dicie and Jack Holbrook moved into his home where they could more readily and conveniently assist him. On the three quarter-sections of land involved in this action, which we will call "Tract A", Ragsdale owed between $6,300 and $7,000 to the Commissioners of the Land Office, as well as another debt to the First National Bank of Erick, Oklahoma, and delinquent taxes. In October, 1945, Holbrook had purchased a County Deed to said tract. It was Ragsdale's desire, despite his financial difficulties, to leave each of his daughters $1,000 at his death in addition to having his physical needs cared for the rest of his life. Accordingly, while the bankruptcy proceedings were still pending, he entered into an arrangement with Elgia Welch, husband of his daughter, Mae, to sell him two of the quarter-sections of his land, referred to herein as "Tract B", and with Holbrook to sell him the three remaining quarter-sections or "Tract A". The essential features of his arrangement with Holbrook as to the latter tract were set forth in a written contract dated July 22nd, 1947, naming the two as the contracting parties therein. In said contract the price Holbrook was to pay Ragsdale for Tract A was specified as $10,000, but it was also provided therein that Holbrook would assume the indebtedness due the Commissioners of the Land Office thereon, as well as "clear" the property of outstanding ad valorem tax claims against it, and allow Ragsdale to maintain his home thereon as long as he lived. In compliance with the contract Ragsdale executed a warranty deed conveying the property to Holbrook and it was attached to the contract and placed in escrow in the office of Ragsdale's attorney, H. C. Ivester, of Sayre, Oklahoma, to be delivered to Holbrook when he had carried out the terms of the contract. Thereupon, Holbrook commenced performance under the contract and proceeded to discharge certain ad valorem tax liens against the property by purchasing another County Deed thereto. Thereafter, in some unexplained manner, the original warranty deed from Ragsdale to Holbrook became misplaced and a substitute in the form of a quit claim deed, dated December 11, 1948, was delivered to the escrow holder in its place. As by the latter date, Ragsdale had become so afflicted with palsy that he could not sign his own name, he executed the latter deed by mark, with his daughter, Dicie Holbrook writing his name thereon for him.

Thereafter, by reason of an "oil play" that had commenced in that area, Holbrook was able to sell an oil and gas lease on the land and 320 acres of the mineral rights for

a total sum of $5,600, which he applied on the balance then due on the above described indebtedness to the Commissioners Of The Land Office. Before that office would approve the transaction and release said indebtedness as to Ragsdale, Holbrook was required to give the Commissioners his personal note and mortgage for the balance of $1,100 then due and to obtain a second and curative quit claim deed from Ragsdale, because the latter's name had been signed on the original by Holbrook's wife. This curative deed was dated the same date as the original one, but on this one the grantor's execution by mark was regular in all respects, his name being written thereon by a wholly disinterested party.

It was not until thereafter on January 17, 1949, that the Ragsdale bankruptcy proceedings in the Federal Court were dismissed and Ragsdale was discharged.

When Ragsdale died in March, 1950, Holbrook still owed him $3,300 under the above described land purchase contract as well as $900 in other funds and Welch owed him $1,000 for Tract B. The day after Ragsdale's funeral the five daughters and the son-in-law, Holbrook, met at the Welch home and it was then agreed that Welch would pay said daughters the $1,000 balance of his indebtedness, less the expense of perfecting the title, and Holbrook would give each of them his personal notes for their proportionate share of the $4,200.00 balance of his indebtedness due their deceased father. Accordingly, the following day the five daughters and their husbands met at the office of the escrow holder, Attorney Ivester, and after arriving at the amount Welch and Holbrook should pay each of the surviving daughters, Welch paid his·debt in cash, while Holbrook gave each four personal notes payable in 1, 2, 3, and 4 years, in amounts totalling $840.00. This cash payment and the notes were accepted by all of the daughters.

Upon Holbrook's default in payment of the first and second of the above described promissory notes, all of the other daughters assigned their notes to Mrs. Welch and she instituted an action against Holbrook in the District Court to collect them. Mrs. Welch paid nothing for the respective assignments of these notes, and, in answer to her petition in said action, Holbrook filed an unverified general denial and specifically denied Mrs. Welch was the owner and holder thereof.

On January 16, 1953, Holbrook and his wife obtained a purchaser for the surface of the land and the remaining mineral rights thereunder for the sum of $30,000. On January 20th, 1953, the three of the Ragsdale daughters herein as plaintiffs in error instituted the present action as plaintiffs to quiet title to Tract A, and, among other things, to cancel as void the hereinbefore described contract and deed from their father to Holbrook, as well as Holbrook's hereinbefore mentioned tax deeds. Holbrook and his wife, Dicie, defended said action on the theory, among others, that said plaintiffs were estopped to deny the validity of said contract and deed, by having acquiesced in or ratified same and accepted benefits thereunder. After trial before the court, judgment was entered for the defendants Holbrook and his wife dismissing plaintiffs' petition. From said judgment said plaintiffs have lodged the present appeal. Our continued reference to the parties will be by their trial court designations.

Under the second proposition appearing in their briefs, plaintiffs contend that no title could vest in Holbrook by reason of his purchase of the tax deeds on the property because under our decisions that was merely a form of paying the taxes thereon and the evidence shows that said purchase was made merely as trustee and/or to protect the then owner of the land, Frank Ragsdale. Defendants' brief denies this and asserts that the last tax deed was purchased pursuant to the contract· between said parties and in part performance thereof. As we have noted that in said contract, Holbrook agreed "to clear the property of ad valorem taxes," defendants' explanation appears plausible enough and we find no proof in the record that Holbrook did not buy that deed to discharge a part of his obligations under the contract. Whether or not Holbrook does, or could claim any

independent title in himself by reason of said deeds or whether he purchased them as agent or trustee for Ragsdale or as a method of discharging the latter's tax indebtedness to the County, appears to be immaterial, as long as his deed from Ragsdale and the title thereby conveyed to him, stands.

Under their first proposition plaintiffs also contend, however, that as Ragsdale then stood adjudged a bankrupt with his bankruptcy proceedings still pending in the Federal Court and said Court had exclusive jurisdiction and control over all of his property, he was without power to alienate or convey it, and the purported deeds from him to Jack and Dicie Holbrook were null and void and of no effect. Under defendants' theory of estoppel it is unnecessary to pass upon the parties' argument as to Ragsdale's ability to transfer good title to any of his real estate during the pendency of the bankruptcy proceedings under the Frazier-Lemke Act, 11 U.S.C.A., § 203. There can be no question from the evidence that when at the family meeting in Mr. Ivester's office after Ragsdale's funeral, the latter's daughters accepted Holbrook's promissory notes for the amount said promisor still owed their said father under the contract the two had entered into almost three years before, they knowingly accepted the benefits of said contract and the conveyances made pursuant thereto, and are now estopped to deny their validity. Allred v. Royalty Owners Ass'n, 202 Okl. 561, 216 P.2d 281; 19 Am.Jur., "Estoppel", Sec. 64; 31 C.J.S., Estoppel, § 110a and b. Of course, at the trial there was testimony by one or two of the daughters that the only reason they accepted Holbrook's notes as a means of discharging his obligations under his contract with their father was that he told them in substance, that that was all they would ever get out of the land and it was indicated that Holbrook had Attorney Ivester's opinion to "back him up", yet there is no indication anywhere in the record that the daughters and/or their husbands *then* made any claim that the Ragsdale-Holbrook contract or either of the Ragsdale-Holbrook deeds were invalid or unenforceable for any reason whatso-

ever, or that they were denied the benefit of legal counsel before entering into such settlement or that they later learned anything about the transaction between Ragsdale and Holbrook rendering it void or inequitable which they didn't know at the time of said settlement. Of course at that time they probably never imagined or anticipated that the land would have the value of $30,000 the evidence indicates that the Holbrooks have recently been offered for it, but it was never proved that when the Ragsdale-Holbrook contract was entered into, before the "oil play", that the property was worth any more than Holbrook therein agreed to pay for it. That it became more valuable afterwards furnishes no ground in or of itself for a court of equity to nullify it. Henry Keep Home v. Moore, 198 Okl. 198, 176 P.2d 1016; Powell v. Moore, 204 Okl. 505, 231 P.2d 695; Cities Service Oil Co. v. Viering, 404 Ill. 538, 89 N.E.2d 392, 13 A.L.R. 1448, 1460. Nor assuming that such would be a proper consideration under the doctrine of estoppel, can the trial court's judgment be said to be clearly against the weight of the evidence on the subject of whether Ragsdale, at the time he entered into the contract with Holbrook, did so of his own volition and while competent. Plaintiffs' efforts to establish the negative of this proposition and to show that this feeble elderly gentleman was overreached and taken advantage of by the younger one, were wholly unsuccessful. On the contrary the overwhelming weight of the evidence indicates that Ragsdale was fully competent and that he himself made his own independent decisions in regard to, and probably instigated, the transaction and had the advice of his own lawyer Ivester, in entering into it.

Nor do we think, as argued by plaintiffs' counsel, that there was anything about the Answer filed by the Holbrooks in 1952 in the action wherein they were sued on the notes Holbrook gave the daughters for the balance of his indebtedness to their father, to preclude a court of equitable cognizance from upholding defendants' plea of estoppel. As the Answer was not verified, it did not effectively deny the execution and delivery of said notes. Tit.

12 O.S.1951, § 286, and cases digested under Note 11, 12 O.S.A. § 286. It specifically denied only that Mae Welch, the plaintiff in said action was the "owner and holder" thereof. For all that appears from the record, said notes evidence valid and subsisting obligations, and the daughters, who as we have seen once accepted them, may still claim their full benefits, as the Court (in holding them to their previous bargain) refused to cancel or nullify them as they belatedly sought to have done in the present action.

As we have determined that the judgment of the trial court is neither erroneous nor clearly against the weight of the evidence in any of the respects claimed, it is hereby affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON and WILLIAMS, JJ., concur.