BURKE AVIATION CORPORATION, John H. Burke, Thelma G. Burke and American First Title and Trust Company, a corporation, Plaintiffs in Error,

v.

ALTON JENNINGS COMPANY, Defendant in Error.

No. 39756.

Supreme Court of Oklahoma.

Oct. 9, 1962.

Rehearing Denied Jan. 8, 1963.

Bruno H. Miller, Oklahoma City, for plaintiff in error American First Title & Trust Co.

Daniel G. Gibbens, Fuller, Smith, Mosburg & Davis, Oklahoma City, for plaintiffs in error Burke Aviation Corp., John H. Burke and Thelma G. Burke.

Curtis P. Harris, Custer W. Sandlin, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an appeal from a judgment in favor of Alton Jennings Company, plaintiff below, decreeing specific performance of a written contract for the purchase and conveyance of real property. The parties will be referred to as they appeared in the lower

court or by name unless otherwise designated.

On August 2, 1960, Alton Jennings Company instituted suit against American First Title and Trust Company to compel conveyance of certain real estate to said plaintiff. The action was based on a written contract dated April 29, 1958, whereby plaintiff agreed to buy and American First agreed to sell Lots 17 to 23, Block 6, Burke Northridge Manor Addition to Village, Oklahoma, according to the "preliminary plat thereof. Property is presently described as set out on the reverse side hereof." The description on the reverse side is set forth as a part of Lot 18, Block 4, and part of Lots 1 to 3, Block 7, Lakeside Estates Addition, and then follows a lengthy and detailed metes and bounds description. Seller (American First) agreed that all utilities would be in and paid for; to furnish an abstract of title on each of the seven building sites; and to have each site surveyed and corner pins set. The consideration was $16,849, payable $10,109.40 on date of contract, $2,703.99 on or before June 1, 1958, and $4,035.61 on or before the specified sale completion date of July 15, 1958. It was provided that time was the essence of the contract. John H. Burke is shown thereon as the realtor agent and signed the contract as such, acknowledging receipt of the initial payment. The petition alleged payment of all sums except the final payment and tendered that amount. Burke Aviation Corporation, John H. Burke and Thelma G. Burke intervened, alleging possession of the land in them, non-performance and laches on the part of plaintiff, and forfeiture of the sums paid. American First filed answer stating it held the naked legal title, that intervenors were the real parties in interest, and admitting receipt of the sums that plaintiff alleged had been paid.

Trial was had to the court and judgment was rendered for conveyance of the property to plaintiff upon payment of the final installment of $4,035.61. The court found there was a valid contract for the purchase and sale of Lots 17 to 23, inclusive, Block 6, Burke Northridge Manor Addition; that Burke Aviation Corporation and Thelma G. Burke had no interest in the property; that plaintiff had fully complied with the contract and made timely tender of the balance of $4,035.61 but that American First refused to accept the tender then made, but did accept and continued to hold plaintiff's check for that amount when tendered in April, 1960; that the delay was caused by American First and intervenor John H. Burke in that American First did not have title to all of the property until John H. Burke conveyed the remainder thereof to American First in July, 1960, and that plaintiff then brought suit on August 2, 1960.

Some of the arguments advanced for reversal of the judgment may be collectively considered under the proposition that the judgment is contrary to the evidence and the applicable law. These contentions must be considered in the light of our decision in Bowen v. Freeark, Okl., 370 P.2d 546, in which we stated:

"Specific performance of a contract is not a matter of right, but a question of equity, and the application is addressed to the sound legal discretion of the trial court and controlled by the principles of equity in full consideration of the circumstances in each case.

"In an equitable action, the presumption is in favor of the correctness of the finding of the trial court, and it will not be set aside unless against the clear weight of the evidence."

The record reflects that the title of American First was in fact as trustee for the intervenor Mr. Burke in connection with the proposed platting of a tract of land, of which the contract property was a part as Burke Northridge Manor Addition, and as security for money which had been advanced by American First. It was conclusively shown that the down-payment and second installment, totaling $12,813.39, were duly paid by plaintiff and credited to this indebtedness. The evidence is also conclusive that plaintiff's representative on

several occasions prior to July 15, 1958, (specified date of closing) informed the president of American First of a desire and intention to complete the transaction on or before such date and did tender the balance due upon condition that the utilities be installed. Ignoring the dispute that "utilities" did not include gas and electricity and telephone, it is a fact that the sewer had not been installed on July 15, 1958. American First's president advised plaintiff the lots could not be conveyed because Mr. Burke had not acted to file the plat and referred plaintiff to Mr. Burke. Thereafter a number of requests were made to Mr. Burke that the transaction be completed. In April, 1960, plaintiff tendered a check to American First for the balance and this check was accepted and held by it subject to disposition of the controversy. By deed dated July 18, 1960, Mr. Burke conveyed a tract of land to American First which finally vested all the title in it and on July 20, 1960, the plat, dedication and restrictions for Burke Northridge Manor Addition were filed in the office of the county clerk. On July 27, 1960, the attorney for Mr. Burke wrote plaintiff a letter stating plaintiff had wrongfully refused to close the sale and that suit would be filed to recover the earnest money paid down as liquidation damages "if this matter is not resolved by August 3, 1960." Plaintiff filed its suit August 2, 1960.

It is urged that the weight of the evidence shows that specific performance was not available to plaintiff because of its own unexcused default. Under this proposition it is argued that the tender of plaintiff was conditional on requirements to which plaintiff was not entitled under the contract and the consequent delay was not chargeable to Burke or American First and amounted to laches and abandonment on the part of plaintiff.

■■ Examination of the above résumé of the record supports the conclusion that tender was timely made and was kept in force. In 52 Am.Jur., Tender, Sec. 24, p.

232, in discussing tenders on condition it is stated:

"* * * But where the condition is one which the debtor has the right to insist on, a tender made subject to that condition is valid. Thus, when the performance of an act on the part of the creditor is to be precedent to or concurrent with the payment by the debtor, the latter may make his offer depend on the due performance of that condition.
* * *"

■ The contention that the plaintiff should have accepted conveyance of title by the metes and bounds description has no merit. The contract provides that certain lots in Burke Northridge Manor Addition were to be conveyed by warranty deed to plaintiff. The reference to a preliminary plat and the metes and bounds description were merely descriptive of the existing conditions. The plat as filed on July 20, 1960, reflects a comprehensive subdivision of a considerable area with numerous restrictions. Furthermore the plat reflects that the Engineer's certificate, the Town Planning Commission's approval, the Town Clerk's certificate, and the acceptance of dedication by the Town Board, were all executed prior to the contract of sale. There remained only the perfecting of title and the formal platting by American First. The statement of Burke that the platting was held up to avoid increased taxes created a delay for his benefit. Both the contract and the circumstances called for platting prior to conveyance. Also, and contrary to appellants' contention, the contract required the delivery of an abstract for each platted lot.

■ Nor do we see how the fact that the contract made time of the essence deprives the plaintiff of a right to specific performance. The delay was caused by the failure of Burke and American First to comply with the contract. In Hamra v. Mitchell, 133 Okl. 264, 271 P. 1042, we stated:

"Where it is expressly stipulated in a contract that time is of the essence

thereof, there must, as a general rule, be a compliance within the time specified, or no recovery can be had upon such contract; but such provisions are for the benefit of the adverse party, and not for the benefit of one who fails to perform his part.

"Equity will not permit a party to take advantage of his own laches to defeat the enforcement of a contract, and where the parties seeking to enforce the contract have, in time, complied with all of its terms, equity will compel specific performance in their favor, although the other parties have made default in time."

See also Dunn v. Yakish, 10 Okl. 388, 61 P. 926.

 It is also urged in support of the claimed laches of the plaintiff that the increase in value of the property precludes plaintiff from enforcing specific performance. Plaintiff's evidence was that the value had increased from $35 or $40 to $50 per front foot and Mr. Burke estimated the increase from $30 or $35 to $50 or $55. The estimates were based on value at the date of the contract (April 29, 1958) and at the time of trial (March 31, 1961). The record does not reflect whether this was a sudden or gradual increase in value. There is no showing that the contract was unfair in any respect at the time it was made. In Powell v. Moore, 204 Okl. 505, 231 P.2d 695, 704, we stated:

"Courts will not enter into an investigation and determine the wisdom of a bargain made by persons competent to deal with their own affairs. 49 Am. Jur., Specific Performance, Sec. 60. In Henry Keep Home v. Moore, 198 Okl. 198, 176 P.2d 1016, 1018, the rule applicable herein was stated as follows: 'The general rule is that specific performance will not ordinarily be denied because of events occurring after the contract is made which tend to show that the contract is unjust, such as change in value, but the unfairness

must be determined as of the date of the contract. 49 Am.Jur. (Spec. Per.) 78, 79; Pomeroy's Equitable Remedies, 2d Ed., § 2219; Annotation, 65 A.L.R. 72.'"

The appellants rely on Parker v. Ryan, 143 Okl. 187, 287 P. 1006 and Atteberry v. Aulick, 204 Okl. 540, 231 P. 993. These cases are not in point because in both cases the party seeking specific performance was guilty of laches in pursuing his remedy and it was only after the property greatly increased in value because of an oil play that he became interested in completing the purchase. These cases are of the class where the parties were dealing with property of a highly fluctuating price character wherein the law feels that a party may not by delay speculate on the outcome and, when the risk is no longer in doubt, then enforce the sale contract. In the present case, the land was not shown to be of such character. Plaintiff was at all times ready to complete the sale when the conditions of the contract were fulfilled. It was American First and Mr. Burke that caused the delay.

 Appellants complain that the trial court erroneously admitted incompetent testimony. This testimony consisted of relating conversations between Mr. Burke and the officers of plaintiff and American First subsequent to the date of the contract, regarding the meaning of the terms of the contract, as to filing the plat, what the contract required the seller to do, and sufficiency of the title of American First. Appellants argue this testimony was in support of plaintiff's allegations in its reply, that the parties agreed final payment would be postponed until the utilities were installed and paid for and abstracts had been furnished, and was an attempt to vary the terms of a written contract by parol agreement. It is obvious that the trial court admitted the testimony as germane to the statement in the intervening defendants' answer that American First had fully performed the requirements of the contract and stood ready, willing and able to transfer title and possession

to plaintiff. The testimony was admitted, not to vary the written agreement, but to show that under plaintiff's construction of the contract the American First was not in a position to convey in accordance with the contract at the time the sale was to be closed. The judgment and findings of the trial court reflect that the trial judge considered the evidence in the above light and not as proof to vary the contract.

 Appellants further contend that the remedy of specific performance is not available to plaintiff. This contention is based upon the circumstance that the execution of the contract by the corporate plaintiff omitted attestation and the corporate seal. Appellants cite Downing v. Young Men's Christian Ass'n of U. of Okla., 178 Okl. 292, 61 P.2d 859, wherein we held that the absence of the corporate seal rendered the contract invalid and non-enforceable against the corporation in the absence of estoppel or ratification. In the cited decision this court found the facts did not fall within § 9668, O.S.1931, now 16 O.S.1961 § 11, whereby a person or corporation may be concluded or estopped to deny the validity of a contract relating to real estate. That statute in part is as follows:

> "Any person or corporation, having knowingly received and accepted the benefits or any part thereof, of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same, * * *."

In the instant case the plaintiff paid $10,109.40 at the inception of the contract on April 29, 1958, and $2,703.99 on or before June 1, 1958. These amounts were duly credited upon the debt of Mr. Burke to American First. The balance of $4,035.61 was tendered by plaintiff on or before the specified closing date of July 15, 1958, and plaintiff tendered a check for the balance in April, 1960, which check was accepted and held by American First. A part of the relief requested by appellants was that all

payments made by plaintiff be forfeited pursuant to the terms of the contract. The record is conclusive that American First and Mr. Burke received and accepted the benefits of the contract and retain them by virtue of the contract. The above cited statute applies to these circumstances.

 In Carlisle v. National Oil & Development Co., 108 Okl. 18, 234 P. 629, we stated:

> "A person who, with full knowledge of the facts, at a time when he is fully competent and capable to contract for himself, accepts the benefits accruing under the void contract, adopts the contract, and is estopped to deny the validity thereof."

See also Kaylor v. Kaylor, 172 Okl. 535, 45 P.2d 743.

It is our conclusion that the judgment of the trial court is not against the clear weight of the evidence.

Affirmed.