146 N.J. Super. 116 (1977)
369 A.2d 20
PATRICIA E. BOWER, EXECUTRIX OF THE ESTATE OF JEAN K. PEDLOW, DECEASED, PLAINTIFF-APPELLANT,
v.
THE ESTAUGH, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1976.
Decided January 7, 1977.
*117 Before Judges FRITZ, CRAHAY and ARD.
Mr. Edward Suski, Jr., argued the cause for the appellant (Messrs. Wilinski, Suski, Scott & Cahill, attorneys).
*118 Mr. William J. Cook argued the cause for the respondent (Messrs. Brown, Cannery, Kulp, Wille, Purnell & Greene, attorneys; Mr. Steven J. Misner, on the brief).
PER CURIAM.
Suit was instituted by plaintiff seeking return of a community entry fee of $16,750 paid by decedent to defendant nursing home under the terms of a life-care agreement. Defendant's answer denied plaintiff's claims of illegality and asserted its right to retain the monies pursuant to the terms of the contract.
Subsequently motions for summary judgment were filed by both parties and, after argument, judgment was granted on behalf of defendant. Plaintiff appeals.
The allegations of error as asserted by plaintiff are as follows: (1) the defendant retirement community will be unjustly enriched if allowed to keep the $16,750 entry fee paid by resident who subsequently died after only one month of residency; (2) the defendant retirement community is not entitled to retain the entry fee when the resident dies during the probationary period of the contract; (3) the forfeiture of the entry fee to the defendant retirement community upon the death of the resident constitutes a testamentary disposition of assets and must be in compliance with the statute of wills, and (4) the life-care contract which is the subject of this controversy is void as against public policy.
The Estaugh is a nonprofit corporation operating a resident and care facility for the elderly. On September 23, 1974 Jean K. Pedlow, the deceased, entered into a contract with defendant whereby, for an entrance fee of $16,750 and a monthly fee of $360, defendant was to provide living accommodations, housekeeping, laundry services, three meals a day and medical services for the rest of decedent's life or until earlier termination of the agreement, within the terms of the contract, by either party. Decedent took up residence at the home on November 1, 1974, and died there on December 4, 1974.
*119 The agreement entered into by the parties contained the following language:
A. Adjustment Period. There shall be a probationary period of three months of residence commencing immediately after Resident enters Medford Leas which shall be considered a period of adjustment. During this period, either the Community or Resident may terminate this agreement by giving written notice to the other of intent so to do. Upon any such termination, Resident shall be entitled to a refund as provided in paragraph 5E(1) below. If Resident should die during this period of adjustment, the right of termination contained in this paragraph shall immediately expire and shall not pass to Resident's estate or legal representative, and the interests of Resident and the Community shall then be governed by the provisions of paragraph 5C below.

* * * * * * * *
C. Termination by Death. Unless sooner terminated by its own provisions, this agreement shall terminate at the death of Resident, whereupon all obligations of the Community under this agreement, other than those relating to burial and to removal of personal property, shall cease. Any personal effects of Resident in the accommodation theretofore occupied or held in storage shall thereupon be delivered to Resident's executor, administrator, or personal representative, or if none qualifies within 30 days after Resident's death, to any of Resident's next of kin. The Community will hold such personal effects for a period of not to exceed thirty (30) days at the risk of Resident's estate or persons entitled thereto, subject to ordinary care of the Community in safeguarding the same until delivery can be had. At the death of Resident, all Entry Fees, Monthly Rates, and any other funds deposited with the Community under this agreement shall thereupon and forthwith become the permanent property of the Community without any right of refund.[*]
The affidavit of William Martin, executive director of the facility, indicates that decedent was advised by legal counsel at the time she signed the agreement with defendant. Plaintiff does not dispute this fact. Moreover, there is no evidence or allegation of fraud or overreaching on the part of defendant. Plaintiff's contentions are purely legal in nature and do not suggest questions of fact. Summary judgment was the most appropriate method of disposing of this case. R. 4:46-2 et seq.
*120 Plaintiff's first contention that the retirement community will be unjustly enriched if allowed to keep the $16,750 entry fee paid by the resident, who died after only one month of residency is without merit. Defendant, a nonprofit organization, is run in part by charitable contributions. If the deceased in time became unable to afford the monthly payments, defendant would have subsidized the cost of her care from a reserve fund. In such circumstances, we have difficulty in assessing as unjust enrichment incidental benefits express in the contract, to inure for the good of others than defendant, like benefits which might have benefited decedent had she lived.
The fact of Mrs. Pedlow's early demise is of no legal moment. The vast majority of cases uphold life-care contracts entered into between nursing homes and aged persons as not unfair, unconscionable or unjust, even if the resident dies a relatively short time after entering the home and before receiving benefits roughly commensurate with the value of the property received by the home. Fidelity Union Trust Co. v. Reeves, 96 N.J. Eq. 490, 494-495 (Ch. 1924), aff'd o.b. 98 N.J. Eq. 412 (E. & A. 1925); Wilson v. Dexter, 135 Ind. App. 247, 192 N.E.2d 469 (App. Div. 1963); Dodge v. New Hampshire Centennial Home For Aged, 95 N.H. 472, 67 A.2d 10 (Sup. Ct. 1949); Stiegelmeier v. West Side Deutscher Frauen Verein, 88 Ohio L. Abs. 97, 20 Ohio O.2d 368, 178 N.E.2d 516 (Ct. App. 1961); Henry Keep Home v. Moore, 198 Okl. 198, 176 P.2d 1016 (Sup. Ct. 1947). It is reasonably foreseeable that death may occur at any time, and it is not unjust for each party to assume the risk that the predictable life span of the resident might vary. Gold v. Salem Lutheran Home Ass'n of Bay Cities, 53 Cal.2d 289, 1 Cal. Rptr. 343, 347 P.2d 687, 689 (Sup. Ct. 1959).
However, plaintiff argues that the present situation is different because certain provisions of the contract make it unenforceable as a life-care contract. We disagree. While the contract allowed the home to reasonably raise the monthly fee to meet justifiable cost increases, its policy, articulated in the *121 contract and largely implemented by specific provisions, was not to dismiss any resident for his inability to pay but only for just and sufficient cause. The parties reached an agreement that for an entry fee and monthly payments defendant would provide decedent with certain care until her death or earlier termination of the agreement by either party. Defendant fully performed until the death of the deceased. Pedlow's early demise results in a benefit of sorts for defendant and others for whom it provides services, but the reverse was equally possible. It is no reason to now find the agreement was invalid.
Death during the probationary period, absent a contractual provision, may cause difficulty in ascertaining the intent of the parties to a contract with respect to the disposition of the entry fee. But see Riemenschneider v. Altenheim, 146 N.J. Super. 123 (decided this day). However, the contract in question contains an express provision as to the disposition of the entry fee where the resident dies within the probationary period. The cases cited by the plaintiff resolving ambiguities where the contract is silent on the subject have no application to the case at bar. With no evidence of undue influence or overreaching, and it being uncontradicted that decedent was represented by counsel, we see no basis for interfering with the obvious and expressed intention of the parties to the agreement.
Plaintiff also alleges that the contractual provision providing the entry fee be retained by the home upon decedent's death constituted a testamentary disposition which was not in compliance with the statute of wills. This contention is also without merit. The entry fee was partial consideration under a valid contract which passed to the home upon execution of the agreement. There was no testamentary disposition. See Bendit v. Intarante, 70 N.J. Super. 116, 125-126 (App. Div. 1961); Eisenhardt v. Schmidt, 27 N.J. Super. 76, 90 (Ch. Div. 1953); Michaels v. Donato, 4 N.J. Super. 570, 573-574 (Ch. Div. 1949).
*122 Plaintiff's final argument that the contract entered into between the resident and the defendant is void as against public policy is also without legal support. The courts have long held that agreements by charitable organizations to provide life care for the aged in return for property or money are ill defined as wagering contracts and not against public policy. Such homes provide a needed service and prevent persons from becoming public charges. Fidelity Union Trust Co. v. Reeves, 96 N.J. Eq. 490, 494-495 (Ch. 1924), aff'd o.b. 98 N.J. Eq. 412 (E. & A. 1925); Annotations "Validity and construction of contract under which applicant for admission to home for aged or infirm turns over his property to institution in return for lifetime care," 44 A.L.R. 3d 1174, 1181-1182 (1972). In Fidelity Union Trust Co. v. Reeves the court stated:
* * * The defense of public policy, in the circumstances, is an intrusion. The policy that dictates that no man shall pauperize himself and become a charge on the public also conversely teaches that charitable institutions which tend to save the public of such charges are to be encouraged. [96 N.J. Eq. at 495]
In the instant case defendant is not supported entirely by public contributions; however, there is no dispute that it is a nonprofit charitable institution which has been involved since 1913 with operating a home for the aged. It is open to all, regardless of race, color, religion or national origin. It is a community most consistent with the type extolled in Fidelity Union Trust Co. v. Reeves, supra. A careful examination of the record reveals no allegation of improper action by defendant, and no sound argument is presented by plaintiff, or is apparent to us, why for public policy reasons the agreement should be declared illegal.
Affirmed.
NOTES
[*] Portion underlined is italicized in contract.