**FEDERAL DEPOSIT INSURANCE CORPORATION, As receiver of Penn Square Bank, N.A., Plaintiff-Appellee,**

v.

**Henry J. STAUDINGER, Defendant-Appellant.**

No. 85–1308.

United States Court of Appeals, Tenth Circuit.

July 30, 1986.

Ronald E. Stakem of Fagin, Hewett, Mathews & Fagin, Oklahoma City, Okl. (M. Elizabeth Scott, with him on brief), for defendant-appellant Henry J. Staudinger.

J. Daniel Morgan of Gable & Gotwals, Tulsa, Okl. (Sidney G. Dunagan, with him on brief), for plaintiff-appellee Federal Deposit Ins. Corp.

Before BARRETT and MOORE, Circuit Judges, and THEIS,* District Judge.

THEIS, District Judge.

This is a collection suit brought by the Federal Deposit Insurance Corporation ("FDIC"), as receiver of the Penn Square Bank ("PSB"), against Henry J. Staudinger, on an unsigned "dummy" promissory note. Staudinger, a Washington, D.C., attorney, had borrowed money from PSB to purchase stock in Clifford Resources, Inc. ("CRI"). CRI was a company controlled by Staudinger's friend and client, Harold Clifford. Staudinger dealt with PSB through Clifford.

In May of 1981, Clifford offered Staudinger the opportunity to buy 120,000 shares of stock which would otherwise be sold at a public offering. The price of 120,000 shares would have been $210,000. Staudinger decided to accept the offer if financing was available from PSB on certain favorable terms. On May 18, 1981, Staudinger confirmed his purchase by letter and sent a promissory note executed in blank to Clifford. Staudinger contends the cover letter stated that Clifford was to purchase the stock only if the favorable PSB financing could be obtained.

In June of 1981, CRI's books reflected Staudinger to be a stockholder due to his purchase of 120,000 shares. Staudinger contends that without his knowledge someone at PSB completed the blank promissory note. On November 24, 1981, Staudinger sent Clifford a letter which reflected his acknowledgement that certain documents indicated that he had purchased 120,000 shares of stock and asked Clifford to adjust the documents to reflect that he had purchased 60,000 shares instead.

In January of 1982, auditors of PSB sent Staudinger an audit confirmation request. Staudinger responded to it by correcting his name and altering the printed principal amount of the loan shown on the audit request to indicate he had purchased 60,000 shares. CRI eventually issued the paper stock certificates representing the shares Staudinger had purchased. PSB sent Staudinger a promissory note with a principal amount of $121,243.35. Upon receipt of the promissory note, on April 14, 1982, Staudinger wrote Clifford a letter to inquire whether the principal amount of $121,243.35 included an original principal amount of $105,000 plus accrued interest:

> Enclosed is a copy of the dummy note which I received from Penn Square Bank. Based on our conversation of this afternoon, it appears that the principal amount listed on the dummy note is probably the principal plus interest which had accummulated [sic] as of October 12, 1981, the date which you indicated I received stock.

> In light of the apparent inability of the bank to reflect a loan of $105,000 as of October 12th, I would suggest that we attempt to straighten everything out between us as of the stated maturity date: 5/26/82.

* Honorable Frank G. Theis, United States District Judge for the District of Kansas, sitting by designation.

The Comptroller of Currency declared PSB to be insolvent and appointed the FDIC as receiver on July 5, 1982. The FDIC made a demand on Staudinger for payment of the note. In a letter to the FDIC dated August 3, 1982, Staudinger stated that he was prepared to reduce the note during the year, that he had partially repaid the loan to PSB and that he requested the shares of stock held as security to be returned to him.

After hearing evidence regarding the above transactions, the trial court directed a verdict in favor of the FDIC. The court found that Staudinger had not only admitted his debt, but had also ratified the terms of the promissory note. According to the court, although Staudinger had not signed the note, he had admitted liability on it, had made payments on the debt evidenced by the note, and had accepted the benefits of the stock transaction for which the loan was made.

Staudinger raises the following issues on appeal: (1) whether the trial court abused its discretion by admitting written hearsay statements offered by the FDIC; (2) whether the court erred in directing a verdict in favor of the FDIC; (3) whether the court erred in not granting Staudinger's motion for a directed verdict; and (4) whether the court abused its discretion in denying Staudinger leave to amend to add an omitted counterclaim.

The trial court admitted the following documents which Staudinger contends were inadmissible hearsay: a lending memorandum, a commercial loan worksheet, copies of the promissory note and the unsigned dummy note. Staudinger argues that the documents do not fit within the business records exception to the hearsay rule, since no proper foundation was laid for their admission. Further, Staudinger contends that the documents are untrustworthy because there is evidence that they were altered by hand.

 Staudinger's primary complaint is that the FDIC did not call any employee of PSB to verify the documents. The business records exception to the hearsay rule

permits admission of a business record as evidence of the truth of the matter stated if it was made at or about the time of the event by a person with knowledge and was made and kept in the course of a regularly conducted business activity. Fed.R.Evid. 803(6). Contrary to Staudinger's assertion, there is no requirement that the party offering a business record produce the author of the item. ¶ 803(6)[02] *Weinstein's Evidence* at 803–179 to –181 (1985). Furthermore, "[a] foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in the case of bank and similar statements." *Id.* at p. 803–178. In this case, the records admitted were the type of records maintained by banks in the ordinary course of business. In addition, the PSB custodian testified that the records were of a type normally maintained in the ordinary course of the bank's business and that the records would be made in close proximity to the time of their origin. Furthermore, Staudinger himself authenticated several of the documents. Finally, Staudinger's arguments concerning the accuracy of the records goes to their weight, not to their admissibility. *Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir.1984). This court cannot say that the trial court abused its discretion in admitting the records. *United States v. Cooper*, 733 F.2d 1360 (10th Cir.1984).

Next, Staudinger contends that the trial court erred in directing a verdict in favor of the FDIC and in denying Staudinger's motion for a directed verdict. In deciding whether to grant a directed verdict, the trial court must view the evidence most favorably to the party against whom the motion is made, and must give the party resisting the directed verdict the benefit of all reasonable inferences. *Yazzie v. Sullivent*, 561 F.2d 183, 188 (10th Cir.1977). "[A] directed verdict for the party having the burden of proof may be granted only where he has established his case by evidence that the jury would not be at liberty to disbelieve." *Hurd v. American Hoist &*

*Derrick Co.,* 734 F.2d 495, 499 (10th Cir. 1984).

■ The trial court granted the FDIC's motion for a directed verdict on the theory of ratification. Ratification is the acceptance of the result of an act, with an intent to ratify, and with full knowledge of all material circumstances. *Burke Aviation Corp. v. Alton Jennings Co.,* 377 P.2d 578 (Okla.1962). Staudinger suggests that since he never signed the note and because he testified that he never intended to ratify the note, a directed verdict was improper. Under Oklahoma law, a party may be liable on a debt even though he did not sign a promissory note. Okla.Stat.Ann. tit. 12A, § 3–401 (1981).

■ Although Staudinger testified that he did not know what a dummy note was and that he did not intend to ratify the stock purchase, the undisputed facts establish that on four separate occasions Staudinger evidenced his ratification of the promissory note. By letter of November 24, 1981, Staudinger acknowledged the purchase of 60,000 shares of stock. In January of 1982, Staudinger responded to a PSB audit confirmation request by making certain changes on the audit request to indicate that he had purchased 60,000 shares. On April 14, 1982, Staudinger wrote Clifford a letter which confirmed his stock purchase. Staudinger contends that no ratification could have occurred because the amount of the promissory note was in dispute. The FDIC is correct in its response that Staudinger's letter of April 14, 1982, indicated that Staudinger had admitted his obligation on the debt and that the only question was between Clifford and Staudinger with respect to the accrual of interest. Finally, on August 3, 1982, in a letter to the FDIC, Staudinger acknowledged his obligation on the note. At the time Staudinger made payments on the note, he had full knowledge of its terms. Furthermore, Staudinger only repudiated his obligation on the note after the bankruptcy of CRI. Although Staudinger has raised a flurry of alleged factual questions regarding the terms of the note, the clear import of the above circumstances overwhelmingly establishes that Staudinger ratified the note. This Court finds Staudinger's remaining arguments concerning mistake and fraud to be without merit. Therefore, the Court holds that the trial court properly granted the FDIC's motion for a directed verdict and denied Staudinger's motion for a directed verdict.

As a final ground of error, Staudinger asserts that the trial court erred in denying him leave to amend to assert a counterclaim. Staudinger's proposed counterclaim sought restitution of the payment Staudinger made to PSB in April of 1982. Staudinger claimed he had made the payment by mistake. The court denied leave to amend since Staudinger had not shown why he failed to file it earlier and because the FDIC would have been prejudiced by the addition of a counterclaim a year after the original answer. Staudinger states that he omitted the counterclaim from his initial answer through inadvertence.

■ Rule 13(f) of the Federal Rules of Civil Procedure affords the trial court discretion in determining whether leave to amend should be granted. In this case, Staudinger failed to raise the counterclaim in his answer, at the first pretrial conference, in his answer to the amended complaint or in the second pretrial memorandum. Staudinger's first assertion of the counterclaim came sixteen months after he was made aware of the facts underlying the counterclaim. Under these circumstances, the court did not abuse its discretion in denying leave to amend. *See Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co.,* 535 F.2d 287 (5th Cir.1976) (denial of leave to amend one year after the answer proper).

No reversible error has been demonstrated. Accordingly, the decision of the trial court is AFFIRMED.