990 F.2d 1257
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL DEPOSIT INSURANCE CORP., as receiver of Balboa
National Bank, Plaintiff-Appellee,
v.
ATLANTIC GROUP, INC., a California corporation, d/b/a Ladki
Rent-A-Car, Defendant-Appellant.
 No. 91-56386.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1993.
Decided April 20, 1993.
 
 Before FARRIS, NORRIS and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This case arises from the FDIC's action, as receiver for Balboa National Bank ("the Bank"), to recover on eight defaulted loans made by the Bank to Atlantic Group, Inc., ("Atlantic"). This appeal concerns only one of the eight loans, Loan No. C0683. Atlantic appeals from a partial grant of summary judgment in favor of the FDIC, holding that Loan No. C0683 was an unsecured loan and, therefore, that Atlantic was barred from asserting the affirmative defense under Cal.Com.Code § 9504(3) as a defense to payment on this note.
 
 
 3
 Atlantic argues that there is a genuine triable issue of fact as to whether the parties intended Loan No. C0683 to be secured. Atlantic also contends that the district court abused its discretion in considering a document purporting to be a payment history for Loan No. C0683 on the ground that it was inadmissible hearsay. We reject both claims and affirm.
 
 
 4
 * Atlantic does not dispute that Loan No. C0683 is due and unpaid. The only defense Atlantic raises to payment on this note is Cal.Com.Code § 9504, a defense that, both parties concede, applies only to secured loans. Therefore, the question before us is whether the district court correctly held that Loan No. C0683 was an unsecured loan, or, alternatively, whether this question must be resolved at trial.
 
 
 5
 To avoid summary judgment, Atlantic must raise a "genuine" factual dispute concerning whether the parties intended this loan to be secured. A dispute is not genuine, however, "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).
 
 
 6
 In resisting summary judgment, Atlantic relies on Loan No. C0683 itself, the seven other loans and their corresponding collateral agreements, the Letter Loan Agreement, and the Declaration of Sam Ladki, all of which were before the district court on summary judgment. The FDIC relies on the same set of documents. Significantly, neither side challenges the credibility of the evidence presented, only its meaning. Accordingly, whether Loan No. C0683 is secured or not is a question of law that may be determined by the court on summary judgment. See Delgado v. Heritage Life Ins. Co., 203 Cal.Rptr. 672, 676 (Cal.App.1984); United Commercial Insurance Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir.1992).
 
 
 7
 We have reviewed de novo each piece of evidence submitted to the district court, and we find that appellant has failed to raise a genuine issue of material fact on the question whether the parties intended to secure Loan No. C0683. It is evident from this record that the parties intended to make Loan No. C0683 an unsecured debt.
 
 
 8
 The most compelling evidence that Loan No. C0683 is unsecured is the fact that, of the eight notes Atlantic executed with the Bank, Loan No. C0683 is the only one that contains no accompanying security agreement or guaranty. See Declaration of Samih A. Ladki, Exhibit A; ER at 51.
 
 
 9
 Atlantic's suggestion that Loan No. C0683 was "cross-collateralized" by boilerplate language found in the collateral agreement forms used for the other seven loans is unavailing. If the parties meant to have Atlantic's entire fleet of vehicles serve as collateral for Atlantic's total indebtedness, then there would have been no reason to designate different groups of vehicles as collateral for each of the seven notes. That the parties specified limited groups of vehicles as collateral for the seven secured loans reveals their intention to supersede any contrary language printed in the collateral agreement forms. See Calif.Civil Code § 1651 ("Where a contract is partly written and partly printed ... the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded.").
 
 
 10
 Moreover, it is evident from Ladki's declaration that the objective behind the 1985 debt restructuring was to allow Atlantic to rotate its inventory of rental cars without first having to satisfy its entire debt to the Bank. See Declaration of Samih A. Ladki; ER at 47-50. To hold that the boilerplate language in the collateral agreement forms secured Loan No. C0683 by spreading the lien against Atlantic's entire inventory of rental cars would undo the very purpose of the restructuring plan--since it would mean that no vehicles could be sold until Atlantic had paid off its total indebtedness to the Bank, including Loan No. C0683.
 
 
 11
 We also reject Atlantic's contention that Loan No. C0683 was cross-collateralized by the Letter Loan Agreement ("Agreement"). The Agreement set forth the procedures by which Atlantic could release particular vehicles out from under the collateral agreements, so as to sell the old cars and buy replacements. Under the Agreement, if Atlantic were to realize proceeds from the sale of one of its vehicles in excess of the "payoff figure" pre-determined by the Bank, this surplus would be applied to pay down the balance of Loan No. C0683. ER at 57. Atlantic characterizes this surplus as an "equity cushion," and contends that this distribution arrangement functioned as collateral for Loan No. C0683.
 
 
 12
 We disagree. The Agreement does not say that the Bank has a right to foreclose on collateral if Loan No. C0683 is in default.[1] Nor does it say that the Bank must allocate to Loan No. C0683 any proceeds it obtains from foreclosure on the collateral pertaining to the other seven loans. Rather, it simply says that the Bank will use any excess proceeds that Atlantic obtains from the sale of released collateral to pay down the balance of Loan No. C0683. Although such an arrangement would certainly affect the timing of Atlantic's payments on Loan No. C0683, we fail to see how it provides an enforceable security interest in an otherwise unsecured loan.
 
 II
 
 13
 Atlantic next argues that the district court abused its discretion in considering a document purporting to be a payment history for Loan No. C0683, that was attached to the declaration of Anthony Searing, an account officer with the FDIC. Atlantic argues that this document should not have been considered because it was inadmissible hearsay. We disagree.
 
 
 14
 The decision to admit business records as evidence is reviewed for an abuse of discretion. United States v. Catabran, 836 F.2d 453, 456 (9th Cir.1988). For business records to be admissible under Rule 803(6) of the Federal Rules of Evidence, the following foundational facts must be established through either the custodian of the records or some "other qualified witness": (1) that the records were made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) that the record was kept in the course of a regularly conducted business activity. Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 717 (9th Cir.1990). There is no requirement that the party offering a business record produce the author of the item. FDIC v. Staudinger, 797 F.2d 908, 910 (10th Cir.1986). Rather, "[t]he phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system. " United States v. Ray, 920 F.2d 562, 565 (9th Cir.1990) (emphasis added).
 
 
 15
 In this case, Searing is directly responsible for the administration and collection of the note at issue. Searing testified in his declaration that he is "familiar with general banking procedures and [is] now the custodian of the records pertaining to the debt sued upon herein." Appellee's Excerpt of Record at 53. Moreover, he states that he has "thoroughly reviewed [the records] prior to making this Declaration" and confirms that "[s]aid records were composed by employees of the Bank in the regular course of the Bank's business at, or near, the time of the event depicted therein." Id.
 
 
 16
 This testimony is sufficient to lay the foundation for the admission of the payment history into evidence. Any arguments concerning the accuracy of the document go to its weight, not to its admissibility.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In the event of default on Loan No. C0683, the only remedy the Agreement provides is a "right to accelerate and/or make demand for payment in full on any indebtedness outstanding" on the other notes. ER at 58